Maryland Dep't. of State Police v. Teleta S. Dashiell, No. 84, Sept. Term 2014, Opinion by Battaglia, J.

**MARYLAND PUBLIC INFORMATION ACT – RECORDS OF INTERNAL AFFAIRS INVESTIGATION – PERSONNEL RECORDS OR INVESTIGATORY RECORDS**

Records of an internal investigation pertaining to the sustained violation of administrative rules were "personnel records" pursuant to Section 10-616(i) of the State Government Article and, therefore, could not be disclosed under the Maryland Public Information Act.

Circuit Court for Baltimore County,
Maryland
Case No. 03-C-10-012541 OC
Argued: May 11, 2015

No. 84

September Term, 2014

MARYLAND DEPARTMENT OF
STATE POLICE

v.

TELETA S. DASHIELL

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Battaglia, J.
Greene and Watts, JJ., dissent.

Filed:  June 25, 2015

Teleta S. Dashiell,[1] Respondent, filed a complaint for declaratory[2] and injunctive relief under the Maryland Public Information Act, Maryland Code (1984, 2010 Repl. Vol.), Sections 10-611 *et seq.* of the State Government Article[3] against the Maryland State Police Department. Ms. Dashiell's complaint was based upon the State Police's refusal to provide her with records of an internal investigation conducted by them in response to a complaint Ms. Dashiell filed against Sergeant John Maiello of the State Police that was "sustained".[4]

Judge Patrick J. Cavanaugh of the Circuit Court for Baltimore County granted the State Police's motion for summary judgment and agreed with the State Police that the records were exempt mandatorily from disclosure as "personnel records."[5] After the Court

---

[1] Throughout the entirety of the judicial proceedings, the American Civil Liberties Union of Maryland ("ACLU") has been acting on Ms. Dashiell's behalf and on its own behalf, but we refer to Ms. Dashiell, individually, as the Respondent.

[2] Sections 3–401 *et seq.* of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2006 Repl.Vol., 2010 Supp.), the Maryland Uniform Declaratory Judgments Act, govern claims for declaratory relief.

[3] Effective October 1, 2014, the Maryland Public Information Act was recodified as Title 4 of the General Provisions Article. 2014 Maryland Laws 407-817. All references to the Maryland Public Information Act here, however are to Sections 10-611 *et seq.* of the State Government Article, Maryland Code (1984, 2010 Repl. Vol.), the provisions of which were applicable at the time the complaint was filed.

[4] According to the Maryland State Police Administrative Manual, a complaint is "sustained", when the "the investigation disclosed sufficient information to substantiate the allegation". Md. State Police Admin. Manual, ch. 5, § V(H)(10) (rev. Aug. 20, 2004). An officer against whom a complaint is sustained "may be subject to disciplinary action, demotion or dismissal and may appeal to the Internal Investigative Review Panel." *Montgomery Cnty. Maryland v. Shropshire*, 420 Md. 362, 374, 23 A.3d 205, 212 (2011).

[5] Section 10-616(i) of the State Government Article provides, in pertinent part:

(continued . . . )

of Special Appeals determined that the Circuit Court erred by not requiring the State Police to create an index of the withheld documents and by not conducting an *in camera* review of the documents, the State filed a writ of certiorari asking us to consider the following question:

> Did the Department of State Police properly invoke the Maryland Public Information Act's (MPIA) exemptions for personnel records and records that are confidential under other law — here the Law Enforcement Officers' Bill of Rights — to deny a request for the internal affairs records of an investigation into the conduct of a specifically identified state trooper?

Ms. Dashiell cross-petitioned and asked:

> [W]hether a complaining victim . . . may be considered the subject of an investigation such that she is a "person of interest" under the MPIA?

441 Md. 61, 105 A.3d 489 (2014) (internal quotation marks omitted).

We shall hold that the internal affairs records of an investigation into the conduct of a specifically identified state trooper is a "personnel record" under Section 10-616(i) of the Maryland Public Information Act, and, in this case, not capable sufficiently of redaction such as to render it "sanitized" for possible disclosure, were disclosure necessary. *See Maryland Dep't of State Police v. Maryland State Conference of NAACP Branches*, 430 Md. 179, 59 A.3d 1037 (2013).

---

(continued . . . )
> (i) *Personnel records*. — (1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information.
> (2) A custodian shall permit inspection by:
> (i) the person in interest; or
> (ii) an elected or appointed official who supervises the work of the individual.

2

Teleta Dashiell had, in 2010, filed a complaint for declaratory and injunctive relief in the Circuit Court for Baltimore County in which she alleged that Sergeant John Maiello of the State Police, during a search for a fugitive, had left a voicemail for her, which included a racially perverse reference:

> 13. On or about November 2, 2009, Ms. Dashiell was questioned by MSP officers during the MSP's search for an alleged fugitive. During this initial questioning, Ms. Dashiell informed the MSP that she did not know the location of the alleged fugitive and had no other information that would assist the MSP in its search.
> 14. On or about November 3, 2009, during the course of the MSP search, MSP Sergeant John Maiello called Ms. Dashiell and left the following message asking her to call him back: "Hey, it's Sergeant Maiello with the State Police. Call me back." Then, erroneously believing he had ended the call, Sergeant Maiello stated:
> > *Why, that's what I think about it, and I need to hear some shit like that . . . That's when I say to myself, 'Oh my God . . . I'm listening to some God dang n[*****]'s voice mail play for 20 minutes.'*
> In addition to the use of the word *n*[*****] in the above statement, Sergeant Maiello was recorded using the slur a second time on Ms. Dashiell's voicemail. A second MSP officer can be heard laughing in the background.

Ms. Dashiell further alleged that she complained to the State Police, which investigated and disciplined Sergeant Maiello, the particulars of which were included in his personnel file, but the details of which were not disclosed to Ms. Dashiell:

> 15. On or about November 5, 2009, Ms. Dashiell contacted MSP Lieutenant Krah Plunkert, believing him to be the Commander of the Princess Anne Barrack, made a complaint regarding MSP Sergeant Maiello. At the time Ms. Dashiell made her complaint she gave a statement to MSP personnel, which she believes to have been recorded.
> 16. Ms. Dashiell's complaint was allegedly assigned to Detective Sergeant Kristi Meakin of the MSP Internal Affairs Section. Detective Sergeant Meakin allegedly investigated Ms. Dashiell's complaint regarding MSP Sergeant Maiello and later informed Ms. Dashiell that she had confirmed the allegations of derogatory racial comments made by Sergeant Maiello.

3

17. Upon information and belief, the MSP closed its alleged investigation into Ms. Dashiell's complaint on or about the second week of February 2010.

18. By letter to Ms. Dashiell dated February 17, 2010 from MSP Captain Kristina Nelson, the MSP stated that there exists an "investigative file" regarding Ms. Dashiell's complaint. This letter also indicated that, among other things, the MSP's alleged investigation confirmed Ms. Dashiell's allegations concerning Sergeant Maiello and stated that "[a]s a result of these findings the appropriate disciplinary action was taken against Sergeant Maiello and documented in his personnel file."

19. The MSP did not inform Ms. Dashiell of the details of the alleged investigation, or of the content of the MSP's files, including the results of any investigation into her complaint or whether (and to what extent) Sergeant Maiello was reprimanded or actually disciplined.

Ms. Dashiell, thereafter, according to her complaint, sent a formal request to the State Police to inspect and copy various records related to the internal investigation of Sergeant Maiello:

20. On March 2, 2010, following completion of MSP's alleged investigation of Ms. Dashiell's complaint, the ACLU of Maryland, acting on its own behalf and on behalf of Ms. Dashiell, sent a formal MPIA request to MSP Lieutenant Colonel Michael Fischer - believed to be the MSP custodian of records - seeking records from the MSP's closed investigation into Ms. Dashiell's complaint against Sergeant Maiello.

21. Specifically, Ms. Dashiell and the ACLU requested to inspect and copy records pertaining to:

> The internal investigation conducted by the Maryland State Police pursuant to the complaint lodged against Sergeant John Maiello by Teleta Dashiell on November 5, 2009, and closed the second week of February, 2010, relating to the offensive voicemail message left on Ms. Dashiell's cell phone on November 3, 2009, including, but not limited to:
> a. Any documents, including video and/or audio recordings, obtained during the investigation;
> b. Any document, including video and/or audio recordings created during the investigation;
> c. Incident reports;
> d. Witness statements;
> e. Charging documents;
> f. Complaint control card;

4

g. Results of internal investigation; and

h. Results of the **review of findings** of the internal investigation.

22. Ms. Dashiell sought records concerning the MSP's handling of the complaint that she filed; where such records are classified as investigatory records, the MPIA makes them available for inspection by a "person of interest." The MPIA defines a "person in interest" as "a person or governmental unit that is the subject of a public record or a designee of the person or governmental unit. . . ."

(emphasis in original). Ms. Dashiell's complaint further alleged that initially her request

was returned stamped "addressee unknown", because the identified custodian of records

had retired:

23. The MSP returned the March 2, 2010 MPIA request to the ACLU stamped "addressee unknown." Apparently, unbeknownst to Ms. Dashiell and the ACLU at the time the MPIA request was sent, Lieutenant Colonel Fischer had retired from the MSP. ·

24. The MSP returned the MPIA request, failing to even identify the new custodian, rather than deliver it to the current custodian of records.

Ms. Dashiell, thereafter, according to her complaint, sent a new request to review the same

records, which was denied "in its entirety":

25. Subsequently, the ACLU of Maryland, on its own behalf and on behalf of Ms. Dashiell, again submitted the MPIA request by letter dated March 11, 2010, this time with a copy to MSP Principal Counsel, Ronald M. Levitan.

26. By letter dated March 22, 2010, Mr. Levitan acknowledged receipt of the MPIA request by the MSP Custodian of Records, as well as himself, on March 17, 2010. He promised a response to the request within 30 days.

27. On April 15, 2010, MSP responded in writing, declining Ms. Dashiell's MPIA request in its entirety.

The complaint further stated that, after the State Police denied the request, Ms. Dashiell

then sought, at minimum, a "detailed index of the records being withheld":

28. By letter dated June 7, 2010, Dickstein Shapiro - having then become counsel for Ms. Dashiell along with the ACLU - sent the MSP a letter challenging the MSP's denial of Ms. Dashiell's MPIA request

5

and seeking, at the very least, a detailed index of the records being withheld, including a summary of each document, and a statement concerning the particular exemption that the MSP claims for each document.

29. The MSP refused, and continues to refuse, to produce any records stemming from Ms. Dashiell's complaint, or detailing its handling of that complaint, or an index of the documents it is withholding.

The State Police moved to dismiss the complaint, or in the alternative, for summary judgment, arguing that it had "properly denied inspection of the records as it was required to do under the Law Enforcement Officers Bill of Rights, Md. Code Ann., Public Safety §§ 3-101-3-113 ("LEOBR")[6], and the mandatory personnel [record] exemption of the

---

[6] Section 3-104 of the Public Safety Article, entitled "Investigation or interrogation of law enforcement officer" provides, in pertinent part:

(a) *In general.* — The investigation or interrogation by a law enforcement agency of a law enforcement officer for a reason that may lead to disciplinary action, demotion, or dismissal shall be conducted in accordance with this section.

\*\*\*

(n) *Information provided on completion of investigation.* — (1) On completion of an investigation and at least 10 days before a hearing, the law enforcement officer under investigation shall be:
(i) notified of the name of each witness and of each charge and specification against the law enforcement officer; and
(ii) provided with a copy of the investigatory file and any exculpatory information, if the law enforcement officer and the law enforcement officer's representative agree to:
1. execute a confidentiality agreement with the law enforcement agency not to disclose any material contained in the investigatory file and exculpatory information for any purpose other than to defend the law enforcement officer; and
2. pay a reasonable charge for the cost of reproducing the material.

6

[M]PIA, Md. Code Ann., State Government § 10-616(i)[7]". Discretionary denial of disclosure was also authorized, the State Police alleged, "under the [M]PIA's permissive denial provisions for intra-agency memoranda, *id.* § 10-618(b)[8], and investigatory records, *id.* § 10-618(f)[9]." Ms. Dashiell, conversely, argued that the information she

---

[7] Section 10-616 of the State Government Article, governing "required denials," provides, in relevant part:

> (a) *In general.* — Unless otherwise provided by law, a custodian shall deny inspection of a public record, as provided in this section.
> * * *
> (i) *Personnel records.* — (1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information.
> (2) A custodian shall permit inspection by:
> (i) the person in interest; or
> (ii) an elected or appointed official who supervises the work of the individual.

[8] Section 10-618(b) of the State Government Article provides:

> (b) *Interagency and intra-agency documents.* — A custodian may deny inspection of any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit.

[9] Section 10-618(f) of the State Government Article provides:

> (f) *Investigations.* — (1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:
> (i) records of investigations conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff;
> (ii) an investigatory file compiled for any other law enforcement, judicial, correctional or prosecution purpose; or
> (iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.
> (2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:
> (i) interfere with a valid and proper law enforcement proceeding;
> (ii) deprive another person of a right to a fair trial or an impartial

(continued . . . )

7

requested was not exempt from disclosure under the Act, and further, that the State Police

had failed to meet its burden to justify its failure to disclose the records.

A hearing was held before Judge Cavanaugh, who granted the State Police's motion

for summary judgment:

> This is a case where Ms. Dashiell filed suit against the State Police alleging violation of the Maryland Public Information Act. Suit was filed on October 27, 2010. Prior to filing suit, they inquired of the Maryland State Police as to what actions they had taken regarding this incident. The Maryland State Police were required to respond on February 17, 2010.
>
> Maryland State Police Captain [Kristina Nelson] sent a letter to Ms. Dashiell stating—I'm not quoting—in response to her inquiry there was an investigative file created regarding Ms. Dashiell's complaint. Second, that the Maryland State Police confirmed Ms. Dashiell's allegations, and third, that appropriate disciplinary action was taken against Sergeant Maiello, and documented in his personnel file as stated in the letter of February 17, 2010.
>
> Shortly thereafter, March 2, 2010, Ms. Dashiell, through her counsel, requested, one—facts gathered during the investigation itself, and an Internal Affairs Investigation. Two—witnesses' statements, incident reports, documents obtained or created during the investigation, and again, an Internal Affairs Investigation, the results of the Internal Affairs Investigation, and five —the results of the review findings of the Internal Investigation. That's what counsel is asking for. Basically, that's what the suit is asking for. All five of these items are contained in the man's personnel file.
>
> The law is very clear. The personnel record is confidential.[10] The only exceptions that I see in the case law involve criminal cases, such as

---

( . . . continued)
    adjudication;
    (iii) constitute an unwarranted invasion of personal privacy;
    (iv) disclose the identity of a confidential source;
    (v) disclose an investigative technique or procedure;
    (vi) prejudice an investigation; or
    (vii) endanger the life or physical safety of an individual.

[10] According to Ms. Dashiell's complaint, in a February 17, 2010 letter she received from the State Police, the State Police:
    stated that there exists an "investigative file" regarding Ms. Dashiell's complaint. This letter also indicated that, among other things, the MSP's

(continued . . . )

*Robinson v. State*, 354 Md. 287*, Baltimore City Police v. State*, 158 Md.App. 273. These Internal Affairs Investigation records are clearly personnel records under Section 10–616, the State Government section of the annotated code.

It clearly states they shall deny—unless you got a criminal case involving constitutional issues usually related to the Sixth or Fourteenth Amendment. There's no question in my mind based upon Ms. Dashiell's attorney's requests they are looking for a result of an internal investigation by the Maryland State Police, and everything they are looking for is personnel records which are confidential and are protected. Therefore, I'm granting the motion for summary judgment.

An order, thereafter, was entered, which stated:

Upon consideration of the Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment, and any response thereto, a hearing having been held, for good cause having been shown, it is this 24th day of June, 2011;

ORDERED, that the Defendant's Motion for Summary Judgment is Granted with prejudice.

Ms. Dashiell noted an appeal. The Court of Special Appeals, in a reported opinion,

vacated the ruling and remanded the case for further proceedings.[11] *Dashiell v. Maryland*

---

( . . . continued)
alleged investigation confirmed Ms. Dashiell's allegations concerning Sergeant Maiello and stated that "[a]s a result of these findings the appropriate disciplinary action was taken against Sergeant Maiello and documented in his personnel file."

[11] Before the Court of Special Appeals, Ms. Dashiell presented three questions, which were rephrased by the court as follows:
1. Did the trial court err in granting summary judgment in favor of the MSP after finding that the documents sought by appellant under the Maryland Public Information Act were exempt from disclosure?
2. Did the trial court err by not ordering the MSP to produce those portions of the withheld documents that are "reasonably severable"?
3. Did the trial court err by allowing MSP to withhold documents under the Maryland Public Information Act without first conducting an independent review of, or permitting discovery of, the documents?

*State Police Dep't*, 219 Md. App. 647, 672-73, 101 A.3d 562, 577 (2014). Our intermediate

court, relying on this Court's decision in *NAACP Branches*, 430 Md. at 190, 59 A.3d at

1043, concluded that "*NAACP Branches* requires the trial court to determine whether each

requested document in the investigatory record is exempt from disclosure under any

provision of the MPIA advanced by the [State Police], and if exempt, whether any such

document is subject to disclosure as severable under SG §10-614(b)(3)(iii)[12]." *Dashiell*,

219 Md. App. at 666, 101 A.3d at 573. The Court of Special Appeals, relying on *NAACP*

*Branches*, also emphasized that "[t]he plain language of §§ 10–616(a) and 10–

614(b)(3)(iii) authorizes redactions so that the applicant can receive portions of an exempt

record which are severable and the receipt of which does not violate the substance of the

exemption", *id.* at 669, 101 A.3d at 575 (emphasis removed), and concluded that the Circuit

Court erred in failing to require the State Police to create an index of the withheld

documents and, in addition, not conducting an *in camera* review of the documents:

> Given the state of the record before us in the instant case, we conclude that we cannot conduct a review of the legality or propriety of the MSP's refusal to disclose the requested documents in the investigative file created as a result of appellant's complaint. Without the identification of each withheld document, along with detailed information about it, appellant was not able to develop cogent arguments regarding whether a particular document is exempt or severable. Without such identification and detailed information,

---

*Dashiell v. Maryland State Police Dep't*, 219 Md. App. 647, 651, 101 A.3d 562, 564-65 (2014).

[12] Section 10-614(b)(3) of the State Government Article provides in pertinent part:

A custodian who denies the application shall:

\*\*\*

 (iii) permit inspection of any part of the record that is subject to inspection and is reasonably severable.

or an *in camera* review of the withheld documents, the trial court did not have a sufficient factual basis to determine the applicability of an exemption to such documents, and if exempt, the severability of any portion thereof. Finally, the lack of identification and information about the withheld documents precluded the trial court from determining, as occurred in *NAACP Branches,* whether any redactions agreed to by appellant would remove a particular document from an exemption or would make such document severable from other exempt documents.

*Id.* at 672, 101 A.3d at 577. Our intermediate appellate court also addressed Ms. Dashiell's argument that she constituted a "person in interest" under the Public Information Act, and determined that she was not because, although she was "the complainant who triggered the investigation by the [State Police], [she was] not the subject of the investigation itself. Sergeant Maiello was the subject of the investigation, and thus a 'person in interest'". *Id.* at 662, 101 A.3d at 571.

We granted certiorari to address the issue raised by the State Police as to whether it properly denied disclosure of the internal investigation records under the "personnel records" exemption of the Public Information Act. We also granted Ms. Dashiell's cross-petition to consider if Ms. Dashiell, in her role as a complaining individual, could be considered the subject of an investigation, such that she is a "person of interest" under the Act. 441 Md. 61, 105 A.3d 489 (2014).

In the present case, Ms. Dashiell had requested specific records from the State Police, such records relating to "[t]he internal investigation conducted by the Maryland State Police pursuant to the complaint lodged against Sergeant John Maiello by Teleta Dashiell on November 5, 2009, and closed the second week of February, 2010, relating to

the offensive voicemail message left on Ms. Dashiell's cell phone on November 3, 2009"

to include:

a. Any documents, including video and/or audio recordings, obtained during the investigation;
b. Any document, including video and/or audio recordings, created during the investigation;
c. Incident reports;
d. Witness statements;
e. Charging documents;
f. Complaint control card;
g. Results of internal investigation; and
h. Results of the review of findings of the internal investigation.

The Circuit Court Judge determined that the requested records constituted "personnel records" of Sergeant Maiello, which were mandatorily exempt under the Public Information Act. The Court of Special Appeals disagreed to the extent that the intermediate appellate court concluded that the Circuit Court erred in failing to require the State Police to create an index of the withheld documents and, in addition, by not conducting an *in camera* review of the documents, with a view to whether the documents could be redacted so as to render them disclosable under *NAACP Branches*.

Before addressing the merits of this case, we must first address a procedural matter, because a judgment declaring the rights of the parties was not entered in the present case. This case comes to us as an appeal from a declaratory judgment action, in which the trial court must have entered "a declaratory judgment, defining the rights and obligations of the parties or the status of the thing in controversy, and that judgment must be in writing and in a separate document." *Montgomery Cnty. Maryland v. Shropshire*, 420 Md. 362, 371 n. 7, 23 A.3d 205, 210 n.7 (2011), quoting *Lovell Land v. State Highway Admin.,* 408 Md.

12

242, 256, 969 A.2d 284, 292 (2009). "[W]hether a declaratory judgment action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made." *Case v. Comptroller,* 219 Md. 282, 288, 149 A.2d 6, 9 (1959); *accord Baltimore Cnty. v. Baltimore Cnty. Fraternal Order of Police Lodge No. 4*, 439 Md. 547, 566, 96 A.3d 742, 753 (2014), *Bowen v. City of Annapolis*, 402 Md. 587, 608, 937 A.2d 242, 254 (2007). In *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 363 Md. 106, 117 n.1, 767 A.2d 831, 837 n.1 (2001):

> Once again, we are presented with a declaratory judgment action in which there is no written declaratory judgment. We have admonished trial courts that, when a declaratory judgment action is brought and the controversy is appropriate for resolution by declaratory judgment, the court must enter a declaratory judgment and that judgment, defining the rights and obligations of the parties or the status of the thing in controversy, *must be in writing.* It is not permissible for the court to issue an oral declaration. The text of the judgment must be in writing. *See Harford Mutual Ins. Co. v. Woodfin,* 344 Md. 399, 414-15, 687 A.2d 652, 659 (1997); *Ashton v. Brown,* 339 Md. 70, 87, 660 A.2d 447, 455 (1995); *Christ v. Department of Natural Resources,* 335 Md. 427, 435, 644 A.2d 34, 38 (1994). Nor, since the 1997 amendment to Maryland Rule 2-601(a), is it permissible for the declaratory judgment to be part of a memorandum. That rule requires that "[e]ach judgment shall be set forth on a separate document." When entering a declaratory judgment, the court must, in a separate document, state in writing its declaration of the rights of the parties, along with any other order that is intended to be part of the judgment. Although the judgment may recite that it is based on the reasons set forth in an accompanying memorandum, the terms of the declaratory judgment itself must be set forth separately. Incorporating by reference an earlier oral ruling is not sufficient, as no one would be able to discern the actual declaration of rights from the document posing as the judgment. This is not just a matter of complying with a hyper-technical rule. The requirement that the court enter its declaration in writing is for the purpose of giving the parties and the public fair notice of what the court has determined.

We may, though, in our discretion "review the merits of the controversy and remand for the entry of an appropriate declaratory judgment by the circuit court", *Baltimore Cnty. Fraternal Order of Police Lodge No. 4*, 439 Md. at 566-67, 96 A.3d at 753, quoting *Bowen,* 402 Md. at 609, 937 A.2d at 255, an option that we, herewith, exercise.

Internal investigations of police officers are regulated by Section 3-101 *et seq.* of the Public Safety Article, Maryland Code (2003), known as the Law Enforcement Officers' Bill of Rights ("LEOBR"). Section 3-104(a) of the LEOBR dictates that, "[t]he investigation or interrogation by a law enforcement agency of a law enforcement officer for a reason that may lead to disciplinary action, demotion, or dismissal shall be conducted in accordance with this section."[13] We explained the internal investigation process[14] in *Shropshire*, 420 Md. at 374-75, 23 A.3d at 212-13:

---

[13] The State Police argue that Section 3-104(n) of the Public Safety Article, entitled "Investigation or interrogation of law enforcement officer" confers confidentiality over internal affairs records. This section is inapposite to this situation, and we agree with the Court of Special Appeals that the LEOBR "does not govern whether documents from an internal investigation are subject to disclosure to third parties under the MPIA." *Dashiell*, 219 Md. App. at 663, 101 A.3d at 571. The Maryland Public Information Act, hereafter, will be our talisman. Any references to the Act hereafter will be to the Maryland Public Information Act, Sections 10-611 *et seq.* of the State Government Article, Maryland Code (1984, 2010 Repl. Vol.).

[14] The Maryland State Police Administrative Manual sets forth the protocol for the investigation of administrative complaints. Complaints are documented by a police employee on a "Form 176," which is entitled "Complaint Against Personnel." Md. State Police Admin. Manual, ch. 5, § V(D)(3)(b) (rev. Aug. 20, 2004). The Internal Affairs Section opens a new case file for the complaint and assigns a tracking number to that file. *Id.* §§ III(E)(1),(F)(1), V(E)(4). Either an Internal Affairs Section Commander or the commander of the employee investigates the complaint, which is complete when the investigator has interviewed the complainant and witnesses, questioned the employee, examined all physical evidence and leads, and the case has been accurately reported. *Id.* §§

(continued . . . )

An internal investigation is initiated by a "complaint" or "allegation of misconduct made against an employee of the department." The Director of the Internal Affairs Division reviews the complaint and determines whether it merits further investigation. If it does, the Director then assigns the complaint to an investigator, typically a commanding officer, tasked with gathering "all available documentary evidence" and compiling an "Internal Investigative Report," which contains the allegations, a written report of any information uncovered by the investigation, and a list of all those contacted or interviewed. At the close of an investigation, a complaint may be "sustained," in which case the officer may be subject to disciplinary action, demotion or dismissal and may appeal to the Internal Investigative Review Panel. After three years, an officer may request that the record of a complaint against him be expunged if the officer was exonerated or the Department determined that "the charges were unsustained or unfounded."

(footnotes and internal citations omitted).

_____

(continued . . . )
V(E)(4), V(H)(1). A completed investigation case file will contain the following:
    10. <u>Investigative</u> Report Format
    The completed investigation case file will be organized as follows:
    a. Complaint Against Personnel Report, Form 176...
    b. Report of Investigation
    <u>(1) Follow the detailed report format in Chapter 3 to ensure the uniformity of internal investigation reports.</u>
    c. Appendices.
    (1) Statement of complainant, if different from that of the victim.
    (2) Statement of victim, if different from that of complainant.
    (3) Statement of witnesses.
    (4) Notification of Complaint, Form 178, if applicable.
    (5) Detailed report <u>from accused employee(s) and/or interrogation transcript</u>.
    (6) Order to Submit to Interrogation, Form 178A, if applicable.
    (7) Explanation of Miranda Rights Form 180, if applicable.
    (8) Other statements or detailed reports.
    (9) Additional exhibits—e.g., photographs, diagrams, charts, etc.
*Id.* § V(H)(10) (underlining in original). The investigator will then recommend, based upon a preponderance of evidence, a finding of either "non-sustained", "sustained" or "unfounded" for each violation. *Id.* § V(H)(10)(c). "Non-sustained" is defined as when "the investigation fails to disclose sufficient information to clearly prove the allegation. *Id.* "Sustained" is defined as when "the investigation disclosed sufficient information to substantiate the allegation." *Id.* The third category, "unfounded" is when "the investigation revealed that the reported investigation did not occur." *Id.*

The Maryland Public Information Act, the gravamen of the instant case, was enacted by Chapter 698 of the Maryland Laws of 1970, and was originally codified as Sections 1-5A of Article 76A of the Code of Maryland.[15] 1970 Md. Laws 1970-75. Upon the enactment of the State Government Article in 1984, the Public Information Act was "transferred without amendment" to Sections 10-611 *et seq.* of the State Government Article,[16] such that in *Office of Attorney Gen. v. Gallagher*, 359 Md. 341, 353, 753 A.2d 1036, 1043 (2000), we described the transition:

> There is no indication in the legislative history that the separate sections of Title 10, subtitle 6, of the State Government Article were to be interpreted differently from the separate subsections of former Article 76A, § 3. As pointed out above, the transfer was described in the Title of Ch. 284 as being "without amendment." Moreover, the revisor's notes to new §§ 10-615, 10-617, and 10-618 stated that they were all "derived without substantive change" from Article 76A, § 3. *See* II *Laws of Maryland 1984* at 1357-1364.

The Public Information Act was enacted under the premise that, "[a]ll persons are entitled to have access to information about the affairs of government and the official acts

---

[15] Section 10-618(f) of the State Government Article, addressing "investigatory records", which is at issue in this case, came into existence through Chapter 1006 of the Acts of 1978. 1978 Md. Laws 2887-92. Prior to that Section 3(b)(i) of former Art. 76A of the Code of Maryland applied to records of investigations conducted by a police department, but it did not include special provisions concerning inspection by a person in interest, although a person in interest was defined in the statute at the time in Section 1(h). 1970 Md. Laws 1972. Chapter 1006 of the Acts of 1978 added to Art. 76A, § 3(b)(i), the precursor to Section 10-618(f)(2), the statement "but the right of a person in interest to inspect the records may be denied only to the extent that the production of them would" generate one of seven consequences currently enumerated in subparagraphs (i) through (vii) of § 10-618(f)(2). 1978 Md. Laws 2891-92.

[16] It has since been recodified as Title 4 of the General Provisions Article. 2014 Md. Laws 407-817. All references to the Maryland Public Information Act here are to Sections 10-611 *et seq.* of the State Government Article, Maryland Code (1984, 2010 Repl. Vol.), the provisions of which were applicable at the time the complaint was filed.

of public officials and employees" according to Section 10-612(a) of the State Government Article. Section 10-612(b) articulates a sentiment in favor of disclosure, "unless an unwarranted invasion of the privacy of a person in interest would result":

> To carry out the right set forth in subsection (a) of this section, unless an unwarranted invasion of the privacy of a person in interest would result, this Part III of this subtitle shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection.

Section 10-614, entitled "Applications", dictates the procedural framework for requesting records and for the response by the custodian of records. Section 10-614(b)(3)(iii), in particular, sets forth the procedures that a custodian must follow to deny an application for disclosure and provides that "a custodian who denies the application shall . . . permit inspection of any part of the record that is subject to inspection and is reasonably severable."

Four Sections of the Act address the circumstances in which a custodian of records "shall deny inspection", or "may deny inspection", of public records. At issue here, Section 10-616, entitled "Required denials — Specific records", provides "a custodian shall deny inspection" of specific records, including that of "personnel records":

> (a) *In general.* — Unless otherwise provided by law, a custodian shall deny inspection of a public record, as provided in this section.
> ***
> (i) *Personnel records.* — (1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information.
> (2) A custodian shall permit inspection by:
> (i) the person in interest; or
> (ii) an elected or appointed official who supervises the work of the individual.

17

We have opined that when Section 10-616 is applicable, "the custodian *must* deny inspection of that record." *Gallagher*, 359 Md. at 353, 753 A.2d at 1043.

The statute does not define "personnel records", but lists types of records that may constitute personal records, *i.e.* an "application, performance rating, or scholastic achievement information." Md. Code Ann., State Gov't § 10-616(i). In *Kirwan v. The Diamondback*, 352 Md. 74, 83, 721 A.2d 196, 200 (1998), we noted that the Legislature did not intend this list "to be exhaustive" but that it "reflect[ed] a legislative intent that 'personnel records' mean those documents that directly pertain to employment and an employee's ability to perform a job." We concluded that a "personnel record" relates to an employee's "hiring, discipline, promotion, dismissal, or any matter involving his status as an employee." *Id.* at 83, 721 A.2d at 200.

In *Shropshire*, 420 Md. at 383, 23 A.3d at 218, decided after the Circuit Court entered its judgment here, we squarely addressed whether internal affairs investigatory records would constitute "personnel records" under the Public Information Act. In the case, the Montgomery County Office of the Inspector General sought to obtain records of a police department internal affairs investigation into transgressions allegedly committed by Sergeant Edward Shropshire and Captain Willie Parker-Loan. The Internal Affairs Division of the County Police Department had determined that Sergeant Shropshire and Captain Parker-Loan "had committed no administrative violations." *Id.* at 366, 23 A.3d at 207. After the Inspector General had sought the records, Sergeant Shropshire and Captain Parker-Loan resisted disclosure, arguing that the records were exempt from disclosure under the "personnel records" exemption of the Public Information Act.

18

We determined that the internal investigatory affairs records involving Sergeant Shropshire and Captain Parker-Loan were related to employee discipline and were, therefore, "personnel records" exempt from disclosure, pursuant to Section 10-616(i). *Id.* at 383, 23 A.3d at 218. We recognized that "records of internal investigations contain significant personal information, such as the investigated officer's name, date of birth, address, social security number, level of education, as well as the complaint, transcripts of witness interviews, and the investigator's notes, that if disclosed, could be potentially detrimental to not only the officers, but also the witnesses". *Id.* at 381, 23 A.3d at 217. We also recognized there is a "significant public interest in maintaining confidentiality," when the officer is cleared of wrongdoing. *Id*. at 381, 23 A.3d at 216.

We distinguished *Shropshire* from the Court of Special Appeals's decision in *Maryland Dep't of State Police v. Maryland State Conference of NAACP Branches*, 190 Md. App. 359, 988 A.2d 1075 (2010), for which we had granted certiorari and had heard argument, although the case had not yet been filed:

> The present case is distinguishable, because the internal affairs records specifically reference the acts taken by Sergeant Shropshire and Captain Parker-Loan during the investigation of a discrete motor vehicle accident and the unsustained allegations against them, rather than statistics compiled regarding the acts of a group of officers without identification of their personal information. Records of alleged systemic racial profiling by a police department as a whole clearly are differentiated from records investigating alleged administrative rule violations by identified police officers in connection with a specific incident.

*Shropshire*, 420 Md. at 382-83, 23 A.3d at 217. We held that "[i]n sum, the internal affairs records involving alleged administrative rule violations by Sergeant Shropshire and Captain Parker-Loan are 'personnel records' pursuant to Section 10–616(i) of the State

19

Government Article, and are, therefore, mandatorily exempt from disclosure by the custodian of records." *Id.* at 383, 23 A.3d at 218.

Subsequently, we issued an opinion in *NAACP Branches*, 430 Md. at 190, 59 A.3d 1043, in which, we affirmed the Circuit Court's Order releasing records omitting personal details of State Police internal investigations of 94 complaints concerning the use of racial profiling between 2003 and 2007. In a prior case between the NAACP and State Police, the parties had entered into a consent agreement, "obligat[ing] the State Police to provide the NAACP with quarterly reports containing detailed information on the number, nature, location and disposition of complaints alleging racial profiling" which was incorporated into an order of the United States District Court for the District of Maryland. *Id.* at 182 n.1, 59 A.3d at 1038 n.1.

The NAACP, thereafter, requested inspection of documents "obtained or created in connection with any complaint of racial profiling", in order to verify if the State Police had been complying with its obligations under the court order. *Id.* at 183, 59 A.3d at 1039. The State Police refused to disclose the records, claiming the records constituted "personnel records" pursuant to Section 10-616(i) of the Public Information Act.

The NAACP then brought an action for declaratory relief to the Circuit Court for Baltimore County. After hearing arguments, the Circuit Court Judge ordered the State Police to submit the documents for his *in camera* review, after which he determined that if identifying information was redacted from the records, the release of the records would not constitute an invasion of privacy. Although the records constituted "personnel records"

20

under the Act, according to the Judge, the records could be disclosed if identifying information was redacted.

In affirming the Circuit Court and the Court of Special Appeals, we rejected the State Police's argument that the redacted records still would constitute "personnel records" of an individual, opining "[a]fter the names of State Police troopers, the names of complainants, and all identifying information are redacted, the records clearly do not fall within the statutory language of 'record[s] of an individual.' There would be no 'individual' identified in the redacted records." *Id.* at 195, 59 A.3d at 1046 (internal citation omitted).

After sifting through the statute and our cases, the State Police argues, as it did before the Court of Special Appeals, that the internal affairs investigatory records of Sergeant Maiello constitute "personnel records", subject to the mandatory denial of disclosure, pursuant to Section 10-616(i), because the records are related to the "hiring, discipline, promotion, dismissal, or any matter involving an employee's status", relying on *Shropshire*, 420 Md. at 378, 23 A.3d at 215, citing *Kirwan*, 352 Md. at 83, 721 A.2d at 200.

Ms. Dashiell argues that the requested records do not constitute "personnel records" under Section 10-616(i) of the Act.[17] Ms. Dashiell argues that even were the requested

---

[17] Ms. Dashiell argues, specifically, that under the statutory construction concept of *ejusdem generis*, which is "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed", Black's Law Dictionary 630 (10th ed. 2014), the requested records do not fall in the "same class" as the three records listed in Section 10-

(continued . . .)

21

records to constitute "personnel records", then disclosure would not result in an unwarranted invasion of Sergeant Maiello's personal privacy under Section § 10-612(b), because Sergeant Maiello's identity is already a matter of public record. Ms. Dashiell also contends that because her complaint against Sergeant Maiello was sustained, *Shropshire* is inapposite because the instant records "reveal *proven misconduct* by a state trooper." Ms. Dashiell next argues that the requested records pertain to the actions of a state trooper engaging in racial animus, and thus public policy would favor the transparency of the internal affairs process and the records generated therefrom.

In essence, the present situation presents us initially with the issue of whether the disclosure should occur under the Public Information Act of internal affairs records of a specifically identified officer where the complaint against the officer was sustained and the officer was identified by the complainant in a public forum.

It is clear that under our jurisprudence a "personnel record" under the Act pertains to discipline of an employee. *See Shropshire*, 420 Md. at 381, 23 A.3d at 216 ("[B]ecause the internal affairs records involving [two specifically identified officers] related to employee discipline, the records are indeed 'personnel records' exempt from disclosure

---

( . . . continued)

616(i) of the State Government Article, an "application, performance rating, or scholastic achievement information", because those items are examples of records that contain private and personal information, while the records of issue in this case are not entitled to a reasonable expectation of privacy. With respect to our interpretation of this list in *Kirwan* as non-exhaustive, we do not find this argument compelling. *See Kirwan v. The Diamondback*, 352 Md. 74, 82-83, 721 A.2d 196, 200 (1998) ("Although this list was probably not intended to be exhaustive, it does reflect a legislative intent that "personnel records" mean those documents that directly pertain to employment and an employee's ability to perform a job.").

22

pursuant to Section 10–616(i) of the State Government Article."); *Kirwan*, 352 Md. at 83, 721 A.2d at 200 ("personnel records" may constitute records involving the "hiring, discipline, promotion, dismissal, or any matter involving his status as an employee.").

The internal affairs records in this case are specific to Sergeant Maiello, and thus are "personnel records" under *Shropshire* and *Kirwan* and its progeny. The holding of *NAACP Branches*, is inapposite, because the instant records, even were redaction possible (which is highly unlikely), would be related to a specific identified individual. *See NAACP Branches*, 430 Md. at 195, 59 A.3d at 1046 ("After the names of State Police troopers, the names of complainants, and all identifying information are redacted, the records clearly do not fall within the statutory language of 'record[s] of an individual.'"); *see also Newark Morning Ledger Co. v. Saginaw Cnty. Sheriff*, 514 N.W.2d 213, 219 (Mich. Ct. App. 1994), citing *Hunt v. FBI*, 972 F.2d 286, 288 (9th Cir. 1992) ("Had plaintiff requested the internal affairs records pertaining to a particular individual, redaction would serve no purpose.").

Because the records requested by Ms. Dashiell relate to discipline of Sergeant Maiello, they are "personnel records" and exempt from disclosure under Section 10-616(i) of the State Government Article.

Ms. Dashiell argues, nevertheless, that the Act protects only against the unwarranted invasion of privacy of Sergeant Maiello, and Sergeant Maiello has already been identified as the actor in the incident under investigation. The fact that Ms. Dashiell identified Sergeant Maiello in a public forum does not undermine the importance of preserving a public employee's privacy in personal information in the records requested, namely, documents obtained or created during the investigation, incident reports, witness

23

statements, charging documents, the complaint control card, the results of the internal investigation and the results of the review of findings of the internal investigation.

Ms. Dashiell also argues that the sustained finding against Sergeant Maiello undercuts the applicability of the "personnel records" exemption. Knowing that the investigation resulted in a sustained finding, however, does not change the nature of the records sought with respect to the discipline imposed and the process for arriving at such discipline. The Court of Appeals of New York arrived at the same conclusion when it addressed the issue of disclosure of police officers's names who were involved in an off-duty egg throwing incident, when the charges were sustained. *Daily Gazette Co. v. City of Schenectady*, 710 N.E.2d 1072, 1078 (N.Y. 1999).

The plain language of the Public Information Act, also, does not differentiate between "sustained" and "unsustained" complaints. A determination that a sustained finding requires disclosure of personnel information, though, would affect all public employees, not only the police force. Further, mandatory disclosure of personnel information related to sustained findings could chill the disciplinary process, rendering those in control less willing to sustain a finding of misconduct.

Most troubling is the argument regarding whether the use of a racial epithet obviates the application of the "personnel records" exemption to the requested records. Although Sergeant Maiello's voicemail message is repugnant to our sensibilities, we do not consider the substance of the employee's actions in determining whether the "personnel records" exemption applies. It is noteworthy that in *NAACP Branches*, we did not consider racial animus in our decision, although it was foundationally a part of the context of the case.

24

Because the Act itself does not differentiate among the bases for internal affairs investigations and the records emanating therefrom, we will not.

With respect to whether the Circuit Court should conduct an *in camera* review of the records as ordered by the Court of Special Appeals, we disagree. The requested records constitute "personnel records" pursuant to Section 10–616(i) of the State Government Article, and *in camera* review cannot alter that decision, nor may redaction be effective under the circumstances.

After having decided that the requested records are "personnel records" and, thus, exempt from disclosure, we need not address Ms. Dashiell's claim that, as the complainant, she is a "person in interest" under the "investigatory records" exemption of the Maryland Public Information Act.[18] We do so, however, to prevent confusion when the case is remanded to the Circuit Court for entry of a declaratory judgment regarding the "personnel records" exemption.

Section 10-618 of the State Government Article, entitled "Permissible denials" dictates that "a custodian may deny inspection" of certain records, most significantly in this case, records of investigations conducted by a police department, but only to "a person in interest . . . to the extent that the inspection would" either "interfere with a valid and proper law enforcement proceeding", "deprive another person of a right to a fair trial or an

---

[18] Ms. Dashiell does not argue that she is a "person in interest" under the "personnel records" exemption of the MPIA. In fact, she acknowledges, in her brief, "The person-in-interest exemption in the personnel records exemption explicitly states that access to personnel records otherwise exempt from disclosure '*shall*' be granted to '*the* person in interest,' i.e., the single employee who is the subject of those records."

impartial adjudication", "constitute an unwarranted invasion of personal privacy", "disclose the identity of a confidential source", "disclose an investigative technique or procedure", "prejudice an investigation", or "endanger the life or physical safety of an individual". Md. Code Ann., State Gov't § 10-618(f). A "person in interest" is defined in Section 10-611(e)(1) of the State Government Article as "a person or governmental unit that is the subject of a public record or a designee of the person or governmental unit".

Ms. Dashiell contends that under the "investigatory records" exemption, she as a complainant is "a person in interest." Ms. Dashiell argues that the text, legislative history and purpose of the phrase "a person in interest" establish that the phrase, under the "investigatory records" exemption, is not limited to the target of the investigation.[19] The State Police disagree.

The Court of Special Appeals did not agree with Ms. Dashiell's characterization of herself as "a person in interest", as we also do not. The Court of Special Appeals, specifically, determined "[Ms. Dashiell] here is the complainant who triggered the

---

[19] Ms. Dashiell argues that the use of the indefinite article "a", as opposed to "the" in Section 10-618(f), demonstrates the General Assembly's intent to not restrict the "person in interest" to merely the target of the investigation. The Public Information Act also includes the phrase "the person in interest" for retirement records, § 10-616(g)(2)(i), student records, § 10-616(k)(2)(i), and driving records, § 10-616(p)(3)(ii). Nonetheless, the statute in some places refers to the subject of the record as either "the" or "a" person of interest, depending on the structure of the sentence preceding the term. *See* §10-616(g) (inspection of retirement records is to be permitted by "*the* person in interest", but that auditors may not disclose information that would identify "*a* person in interest") (emphasis added); §10-625 (allowing "*a* person of interest" to request the correction of inaccurate or incomplete information in a public record that "*the* person in interest is authorized to inspect.") (emphasis added) We decline to derive meaning from the use of "a" versus "the" in the Act.

26

investigation by the [State Police], and not the subject of the investigation itself. Sergeant Maiello was the subject of the investigation, and thus a 'person in interest.'" *Dashiell*, 219 Md. App. at 662, 101 A.3d at 571.

As we explained in *Mayor & City Council of Baltimore v. Maryland Committee Against the Gun Ban*, 329 Md. 78, 82-83, 617 A.2d 1040, 1042 (1993):

> If the person seeking to inspect the record of a police department investigation is not "a person in interest," then the rule of § 10-618(f)(1) applies. Under (f)(1), the custodian may deny inspection. But (f)(1) must be read in conjunction with the general condition to § 10-618-"if [the] custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest." Thus, if the person seeking inspection of the records of a police department investigation is not a person in interest, and if the custodian believes that disclosure of the records of the police investigation is not in the public interest, the Act does not require disclosure.

(internal citations and footnote omitted).

In *Maryland Committee Against the Gun Ban*, 329 Md. at 92-94, 617 A.2d at 1046-47, we explored the legislative history of the Act, and, in particular the addition of the phrase "a person in interest" in Section 10-618(f)(2) in 1978. The Gun Ban Committee sought records developed during an investigation of various Baltimore City police officers's conduct during a specific incident involving the service of a subpoena duces tecum. The Committee was not the complainant. The custodian denied the Committee access to the records relying, in part, on the fact that the Committee was not "a person in interest" under Section 10-618(f)(1).

In discussing the Act's legislative history, we held that the Committee was not a "person in interest" because it was not the subject of the investigation. We left open the

question of "whether such a complainant . . . may be a 'person in interest' under Section 10-618(f)(2)." *Id.* at 90, 617 A.2d at 1046.

Were the records to be considered "investigatory records" solely and not "personnel records",[20] for the purpose of argument, Ms. Dashiell would not be "a person in interest" pursuant to the "investigatory records" exemption of the Act. Under the plain language of the statute a "person in interest" is "a person or governmental unit that is the subject of a public record or a designee of the person or governmental unit." Md. Code Ann., State Gov't §10-611(e). A subject is "the person or thing that is being discussed or described." *Webster's Third New International Dictionary of the English Language Unabridged* 1585 (3rd ed. 2002). The subject of the investigation in the present case is the officer targeted by the investigation. Ms. Dashiell, thus, is not "a person in interest".

---

[20] In light of our determination that the records constitute "personnel records" under 10-616(f), the discretionary authority of the custodian under 10-618 "cannot arise." *See Office of Attorney Gen. v. Gallagher*, 359 Md. 341, 354, 753 A.2d 1036, 1043 (2000). Nonetheless, requested records may fall within several categories under the Act. *See Maryland Dep't of State Police v. Maryland State Conference of NAACP Branches*, 430 Md. 179, 193, 59 A.3d 1037, 1045 (2013) ("[T]he fact that the requested records in this case might have been covered by § 10–618(f) would not preclude their status as personnel records covered by § 10–616(i).").

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THAT COURT FOR THE ENTRY OF A DECLARATORY JUDGMENT IN CONFORMANCE WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

Circuit Court for Baltimore County
Case No. 03-C-10-012541

Argued: May 11, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 84

September Term, 2014

_____

MARYLAND DEPARTMENT OF STATE
POLICE

v.

TELETA S. DASHIELL

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Dissenting Opinion by Watts, J., which Greene,
J., joins

_____

Filed:  June 25, 2015

Respectfully, I dissent.[1]  I would hold that a record of discipline based on a sustained complaint against a law enforcement officer is not exempt from the Public Information Act under its "personnel records" exemption.

In enacting the Public Information Act, the General Assembly declared: "All persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees."  Md. Code Ann., Gen. Prov. (2014) ("GP") § 4-103(a).[2]  See also Md. Dep't of State Police v. Md. State Conference of NAACP Branches, 430 Md. 179, 190, 59 A.3d 1037, 1043 (2013) ("[T]he Public Information Act reflect[s] the [General Assembly's] intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government." (Quoting Kirwan v. The Diamondback, 352 Md. 74, 81, 721 A.2d 196, 199 (1998) (internal quotation marks omitted)).

Accordingly, the General Assembly expressly directed courts to interpret the Public Information Act "in favor of allowing inspection of a public record" "unless an

---

[1]I agree with the Majority that: (1) this Court should exercise its discretion to review this case's merits and remand for the entry of an appropriate declaratory judgment, see Maj. Slip Op. at 14; (2) Md. Code Ann., Pub. Safety (2003, 2011 Repl. Vol.) § 3-104(n)(1)(ii)1, which is part of the Law Enforcement Officers' Bill of Rights, does not exempt from the Public Information Act a record of discipline based on a sustained complaint against a law enforcement officer, see Maj. Slip Op. at 14 n.13; (3) an *in camera* review of the relevant records is unnecessary in this case, see Maj. Slip Op. at 25; and (4) Teleta S. Dashiell, Respondent, is not a "person in interest" as defined by Md. Code Ann., Gen. Prov. (2014) § 4-101(e), see Maj. Slip Op. at 28.

[2]Before 2014, the Public Information Act was codified as Md. Code Ann., State Gov't (1984, 2009 Repl. Vol.) § 10-611 to -630.  In 2014, the General Assembly recodified the Public Information Act as GP § 4-101 to -601.  For clarity, I refer to the Public Information Act's current version, which, for this case's purposes, is substantively identical to its predecessor.

unwarranted invasion of the privacy of a person in interest would result[.]" GP § 4-103(b).

See also NAACP Branches, 430 Md. at 190, 59 A.3d at 1043 (Courts must "liberally construe[]" the Public Information Act "to effectuate [it]s broad remedial purpose[.]" (Quoting Kirwan, 352 Md. at 81, 721 A.2d at 199)); NAACP Branches, 430 Md. at 190, 59 A.3d at 1043 (The Public Information Act establishes "a general presumption in favor of disclosure of government or public documents." (Quoting Office of Governor v. Washington Post Co., 360 Md. 520, 544, 759 A.2d 249, 262 (2000) (internal quotation marks omitted)); Washington Post, 360 Md. at 545, 759 A.2d at 263 ("[C]ourts must interpret the [Public Information Act's] exemptions narrowly[.]" (Citation and internal quotation marks omitted)).

In this instance, I fear that the Majority has not heeded the mandate of both the General Assembly and this Court's precedent to broadly construe the Public Information Act in favor of disclosure by narrowly construing the Public Information Act's exemptions. As a result, a law enforcement agency will be permitted to conceal from public view the action that it ultimately took in response to a **sustained** complaint about a law enforcement officer. This is particularly unfortunate in light of the circumstance that, today, honoring the public's right to know how law enforcement agencies respond to misconduct—especially misconduct that arises out of contact with the public—is vital to maintaining the

public's trust in law enforcement.  In other words, to paraphrase Justice Louis D. Brandeis, transparency is the best remedy.[3]

The Public Information Act's "personnel records" exemption states: "[A] custodian shall deny inspection of a personnel record of an individual, including an application, a performance rating, or scholastic achievement information."  GP § 4-311(a).  A personnel record is a "document[] that directly pertain[s] to employment and an employee's ability to perform a job"; thus, a document is not a personnel record where the document does not "relate to [the employee's] hiring, discipline, promotion, dismissal, or any matter involving [the employee's] status as an employee[.]"  Washington Post, 360 Md. at 547, 759 A.2d at 264 (quoting Kirwan, 352 Md. at 83, 721 A.2d at 200) (third alteration in original) (internal quotation marks omitted).  For example, the following documents are not personnel records: records of parking tickets, see Kirwan, 352 Md. at 84, 721 A.2d at 200-01; records of telephone calls to potential judicial or executive appointees, see Washington Post, 360 Md. at 548, 759 A.2d at 264; and employment contracts, see Univ. Sys. of Md. v. Balt. Sun Co., 381 Md. 79, 102, 847 A.2d 427, 441 (2004).

In Montgomery Cnty. Md. v. Shropshire, 420 Md. 362, 381, 23 A.3d 205, 216 (2011), this Court held that certain "internal affairs records" were personnel records because they "related to employee discipline" **and** because the "investigation **clear[ed] the officers of wrongdoing**"; thus, "there [wa]s a significant public interest in maintaining

---

[3]"Sunlight is said to be the best of disinfectants[.]"  Buckley v. Valeo, 424 U.S. 1, 67 (1976) (quoting Louis D. Brandeis, Other People's Money and How the Bankers Use It 62 (National Home Library Foundation ed. 1933)).

confidentiality, both in fairness to the investigated officers and cooperating witnesses." (Emphasis added) (citations omitted). See also id. at 381, 23 A.3d at 216-17 ("[E]ven the best officers could be subject to **false or baseless** complaints[.]" (Emphasis added) (internal quotation marks omitted)). Indeed, in Shropshire, id. at 382-83, 23 A.3d at 217, this Court distinguished Md. Dep't of State Police v. Md. State Conference of NAACP Branches, 190 Md. App. 359, 988 A.2d 1075 (2010), aff'd, 430 Md. 179, 59 A.3d 1037 (2013), on the ground that, in Shropshire, the internal affairs records "specifically reference[d] the acts taken by [law enforcement officers] during the investigation of a discrete motor vehicle accident and the **unsustained** allegations against them, rather than statistics compiled regarding the acts of a group of officers without identification of their personal information." (Emphasis added). Accordingly, this Court expressly declined to "address whether records of '**sustained**' complaints may be disclosed[.]" Shropshire, 420 Md. at 374 n.12, 23 A.3d at 212 n.12 (emphasis added).

I would resolve the issue that this Court expressly left open in Shropshire, id. at 374 n.12, 23 A.3d at 212 n.12, by holding that the Public Information Act's "personnel records" exemption does not apply to a record of discipline based on a sustained complaint against a law enforcement officer. This result is far different from the circumstance of permitting unsubstantiated allegations of a complaint to be made public. In sustaining a complaint against one of its officers, a law enforcement agency acknowledges the truth of the very facts that "directly pertain to employment and [the officer]'s ability to perform [his or her] job." Washington Post, 360 Md. at 547, 759 A.2d at 264 (quoting Kirwan, 352 Md. at 83, 721 A.2d at 200). In contrast to such facts, the discipline that the law enforcement agency

decides to administer to the officer does not directly pertain to employment or the officer's ability to perform his or her job. Plainly put, the officer did what the officer did, regardless of how the law enforcement agency decided to respond. The administration of the discipline is an action of—and thus reflects the judgment of—the law enforcement agency, not the officer. Thus, a record of discipline based on a sustained complaint against a law enforcement officer is not a personnel record; instead, it is among the very types of document that the Public Information Act is designed to make available to the public: a document that reflects how a public agency responds to an employee's proven misconduct.[4]

In addition to being the result that the law mandates, acknowledging the public's right to know how law enforcement agencies respond to sustained allegations of

---

[4]Making public a record of discipline based on a sustained complaint against a law enforcement officer would not "chill" the law enforcement disciplinary process. Maj. Slip Op. at 24. By the time that a complaint against a law enforcement officer has been sustained, an investigation has already concluded, and all that remains is for the law enforcement agency to choose what discipline to administer.

Additionally, in Daily Gazette Co. v. City of Schenectady, 710 N.E.2d 1072, 1078 (N.Y. 1999), see Maj. Slip Op. at 24, the Court of Appeals of New York concluded that records of discipline based on law enforcement officers' confirmed misconduct were exempt from New York's Freedom of Information Law under its "personnel records" exemption, but the fact that the misconduct was confirmed was not the basis of that Court's holding. In Daily Gazette, instead of addressing the critical circumstance that the law enforcement officers' misconduct had been confirmed, the Court of Appeals of New York focused on rejecting a newspaper's contention that "the identity, status[,] and purpose of the [party] requesting access" was relevant, 710 N.E.2d at 1076; for example, the newspaper had contended that the record was not exempt because the newspaper did not intend to "use the records in a legal proceeding," id. at 1074. In other words, the Court of Appeals of New York failed to address the vital distinction between confirmed misconduct and unsubstantiated allegations of misconduct. By contrast, this Court has already explicitly recognized that distinction. See Shropshire, 420 Md. at 374 n.12, 23 A.3d at 212 n.12 (This Court expressly declined to "address whether records of 'sustained' complaints may be disclosed[.]").

misconduct is critical to preserving the public's confidence in law enforcement.

For the above reasons, respectfully, I dissent.

Judge Greene has authorized me to state that he joins in this opinion.