*Department of Public Safety & Correctional Services v. Terry L. Proctor, Sr.*, No. 2295, September Term, 2024. Opinion by Hotten, J.

**RECORDS – EXAMINATION, INSPECTION, AND DISCLOSURE; PUBLIC ACCESS – MARYLAND PUBLIC INFORMATION ACT – PERSON IN INTEREST**

Courts retain the ultimate discretion to define a "person in interest" under the Maryland Public Information Act. Allowing the government to unilaterally define whether an individual qualifies as a "person in interest" would grant it the power to deny disclosure whenever it sees fit, undermining the very purpose of statutory oversight.

**RECORDS – EXAMINATION, INSPECTION, AND DISCLOSURE; PUBLIC ACCESS – MARYLAND PUBLIC INFORMATION ACT – PERSON IN INTEREST – PERSONAL REPRESENTATIVE**

A personal representative of a "person in interest" may qualify for enhanced inspection rights.

**RECORDS – EXAMINATION, INSPECTION, AND DISCLOSURE; PUBLIC ACCESS – MARYLAND PUBLIC INFORMATION ACT — BURDEN OF PROOF**

The government bears the burden of demonstrating why nondisclosure of a public record is warranted. Generalized concerns that the disclosure would result in harm are insufficient to justify a total denial of disclosure.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2295

September Term, 2024

_____

DEPARTMENT OF PUBLIC SAFETY &
CORRECTIONAL SERVICES

v.

TERRY L. PROCTOR, SR.

_____

Berger,
Kehoe, S.
Hotten, Michele D.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Hotten, J.

_____

Filed: May 12, 2026

This appeal arises from the denial by the Department of Public Safety and Correctional Services ("the Department") of the request for records concerning a fatal incident at a state correctional facility. On September 29, 2023, Terry Proctor, Sr. ("Appellee"), the personal representative of the Estate of his deceased son, Terry Proctor, Jr., submitted a request under the Maryland Public Information Act ("MPIA") for records surrounding the death of his son at the hands of another inmate. Following the refusal by the Department to disclose the requested materials, Appellee filed suit in the Circuit Court for Baltimore County seeking a declaratory judgment and order compelling their production. The circuit court, following a hearing, subsequently ordered the Department to produce two specific record items: a surveillance video documenting the decedent's death and Independent Investigations Division ("IID") video records depicting the prison employees' response thereto. The Department now appeals that ruling, asserting that various statutory justifications under the MPIA preclude disclosure.

## QUESTIONS PRESENTED

The Department presents two questions for our review:

1. Did the circuit court err in ordering the Department to disclose surveillance video of Mr. Proctor, Jr.'s murder despite the [M]PIA's exception for records that contain intelligence information and security procedures of a correctional facility?

2. Did the circuit court err in ordering the Department to disclose video recordings related to an internal investigation of its employees, notwithstanding the [M]PIA's exception for personnel records, on the ground that Mr. Proctor, Sr. was a "person in interest" for purposes of those records?

For the reasons outlined below, we affirm the judgment of the circuit court.

# LEGAL FRAMEWORK

In 1970, the Maryland General Assembly enacted the Maryland Public Information Act ("MPIA"), allowing individuals "to inspect any public record at any reasonable time." *See* Gen. Prov. § 4-201(a)(1). The MPIA was enacted with the "intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government." *Maryland Dep't of State Police v. Maryland State Conf. of NAACP Branches*, 430 Md. 179, 190 (2013) (quotation omitted); *see also* Gen. Prov. § 4-103(a) (stating the MPIA is predicated on the principle that "all persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees."); *Maryland Dep't of State Police v. Dashiell*, 443 Md. 435, 452 (2015). To effectuate this purpose, the MPIA is "construed in favor of allowing inspection of a public record[.]" Gen. Prov. § 4-103(b).

The government bears the burden of justifying the withholding of any public record. *See id.* § 4-362(b)(2). Under § 4-301(a), the government is required to deny inspection when the record "is privileged or confidential[,]" or inspection would be contrary to the law. Similarly, under § 4-358, the government has general discretion to temporarily deny inspection when the "custodian believes that inspection would cause substantial injury to the public interest[.]" *See also id.* § 4-343 ("[I]f a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, the custodian may deny inspection by the applicant of that part of the record. . . ."). Beyond these provisions, Subtitle 3 of the MPIA carves out additional, specific exemptions for denying inspection. *See id.* § 4-301 *et seq*. The relevant exemptions in the case at bar are

§§ 4-351 and 4-311, which cover investigatory records and "personnel records", respectively.

Under the first exemption, the government *may* deny inspection when the record is investigatory in nature. *See id.* § 4-351(a). Investigatory records include:

(1)     records of investigations conducted by the Attorney General, a State's Attorney, a municipal or county attorney, a police department, or a sheriff;
(2)     an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose;
(3)     records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a municipal or county attorney, a police department, a State or local correctional facility, or a sheriff; or
(4)     records, other than a record of a technical infraction, relating to an administrative or criminal investigation of misconduct by a police officer, including an internal affairs investigatory record, a hearing record, a record of positive community feedback, and records relating to a disciplinary decision.

*See id.* § 4-351(a). In determining whether the government *should* deny inspection, the government "must make a judgment" as to whether "disclosure 'would be contrary to the public interest[.]'" *See Glass v. Anne Arundel Cnty.*, 453 Md. 201, 210 (2017) (quotation omitted); *see also* Gen. Prov. § 4-343. However, for "persons in interest," the government may deny inspection of investigatory records "only to the extent the inspection would:"

**(1)     interfere with a valid and proper law enforcement proceeding;**
(2)     deprive another person of a right to a fair trial or an impartial adjudication;
**(3)     constitute an unwarranted invasion of personal privacy;**
(4)     disclose the identity of a confidential source;
(5)     disclose an investigative technique or procedure;
(6)     prejudice an investigation; or
(7)     endanger the life or physical safety of an individual.

*Id.* § 4-351(b) (emphasis added). A "person in interest," as contemplated by § 4-311(b)(1), includes "a person or governmental unit that is the *subject* of a public record or a designee of the person or governmental unit[.]" *Id.* § 4-101(g)(1) (emphasis added).

Under the second exemption, the government *shall* deny inspection of "a personnel record of an individual[,]" *see id.* § 4-311(a), which is a record that "pertains to discipline of an employee." *Dashiell*, 443 Md. at 458. This exemption serves to safeguard the reasonable privacy expectations "'that a person in interest has' in his or her personnel records." *Maryland Dep't of State Police v. Maryland State Conf. of NAACP Branches*, 190 Md. App. 359, 368 (2010) (quotation omitted), *aff'd*, 430 Md. 179 (2013). Against this backdrop, the inspection of personnel records may *not* be denied to "the person in interest[.]" *See* Gen. Prov. § 4-311(b)(1).

In sum, the government's ability to deny inspection of public records is tempered by the MPIA's goal for transparency. Notably, the statutory nondisclosure exemptions under §§ 4-351 and 4-311 do not extend fully to "persons in interest."

## BACKGROUND

On the night of December 14, 2020, Terry Proctor, Jr.—an inmate at Dorsey Run Correctional Institute who was four months shy of being released—was stabbed repeatedly with a sharpened fan blade while asleep in his bunk. Deandre Allen, another inmate, alerted on-duty correctional officers that an inmate was bleeding, prompting staff to summon both

4

a nurse and an ambulance. Upon the arrival of medical personnel, Mr. Proctor Jr. was found unconscious and unresponsive before ultimately succumbing to his injuries.[1]

The ensuing investigation identified Mr. Allen as the assailant.[2] Surveillance footage captured Mr. Allen entering the victim's bunk, committing the attack, and subsequently fleeing the area. Furthermore, witness statements from other inmates corroborated the video evidence, as they reported observing Mr. Allen attacking the victim.

On September 29, 2023, Appellee submitted a request under the MPIA to the Department for information surrounding his son's death. Specifically, Appellee requested the following information:

> **(a) The complete file/records on Terry Proctor, Jr., including but not limited to the incident report, and any relevant photographs;**
> **(b) Any and all documents related to the subsequent investigation, including but not limited to the [Internal Investigation Unit ("IIU")] investigation and [Investigative Division ("IID")] investigation with all supp[l]ements, exhibits, and subparts;**
> **(c) Any and all audio and/or video images or recordings captured by corrections officers or surveillance cameras;**
> (d) Any and all documents relating to information received from other agencies relating to Terry Proctor, Jr.;

---

[1] A subsequent autopsy detailed the brutality of the assault, revealing ten cuts and thirty stab wounds across the victim's face, neck, back, and scalp, as well as evidence of blunt force trauma. Of these injuries, five stab wounds were determined to be fatal, including four that punctured the victim's lungs and one that punctured his brain.

[2] Mr. Allen initially pled guilty to first-degree murder for Mr. Proctor Jr.'s death, but the plea was vacated and remanded on appeal. *Allen v. State*, No. 1053, Sept. Term, 2023 (Md. App. Ct. July 3, 2024). Upon remand, Mr. Allen was found guilty of voluntary manslaughter, possession/receiving a weapon while confined/detained, and dangerous weapon with intent to injure on September 12, 2025. He was sentenced to 10 years for the voluntary manslaughter conviction, 10 years for the possession/receiving a weapon while confined/detained conviction, and 3 years for the dangerous weapon with intent to injure conviction, all to run consecutively. He filed an appeal on October 21, 2025, which remains pending.

(e) Any and all grievances filed by Mr. Proctor and the administrative responses thereto;

(f) Any and all grievances filed by Mr. Allen that mention, involve, or relate to Mr. Proctor and the administrative responses thereto;

(g) Any and all disciplinary records pertaining to, mentioning, or involving Mr. Proctor; and

(h) The names and identification numbers of all of the Department of Public Safety Correctional Services Officers involved in the interactions with Terry Proctor, Jr. on or about December 14, 2020 and/or December 15, 2020. (Emphasis added)

Despite multiple follow-up inquiries by Appellee between October and December 2024, the Department failed to provide any substantive response. As a result, on December 12, 2023, Appellee filed suit in the Circuit Court for Baltimore County seeking a declaratory judgment and an order compelling production of the records.[3]

The Department eventually produced records pursuant to Appellee's MPIA request on February 5, 2024, and continued to supplement additional records until March 4, 2024, but withheld most of the evidence, including a surveillance video depicting the decedent's death and a comprehensive IID report detailing Dorsey Run's employees' response to the death. The Department denied inspection of the surveillance video depicting the decedent's death by citing the MPIA discretionary investigatory records exemption for "intelligence

---

[3]     Independent of the state court proceedings, Appellee—represented by the same counsel—initiated two now-consolidated federal damages actions regarding the alleged failure to protect his son. *See Proctor v. Scruggs*, RDB-23-3396 (D. Md.); *Proctor v. State of Maryland*, RDB-24-251 (D. Md.). In those cases, the surveillance video of the decedent's death was filed under seal and produced to his counsel pursuant to a stipulated protective order entered on March 7, 2024. This order required the video to be treated as confidential and disclosed only as permitted. In ordering the surveillance video to be sealed, the federal court found there was "no option aside from sealing the medical records and CCTV footage [that] is feasible to ensure [the] [d]ecedent's privacy and institutional security[.]"

information or security procedures" of a correctional facility. *See* Gen. Prov. § 4-351(a)(3). The Department further denied inspection on the grounds the surveillance video constituted an "unwarranted invasion of personal privacy" of other depicted inmates. *See id.* § 4-351(b)(3). Additionally, the Department withheld the comprehensive IID report—which included thirty audio interviews and three videos—by citing the "personnel record" exemption under Gen. Prov. § 4-311(a).

## A. The Evidentiary Hearing and Subsequent Judicial Orders

On January 14, 2025, the circuit court held an evidentiary hearing to determine whether the Department properly withheld the requested records. Regarding the surveillance video, the Department justified withholding the security video under the discretionary investigatory records exemption under Gen. Prov. § 4-351(a)(3), asserting that disclosure would compromise Dorsey Run's institutional security and harm the public interest. Furthermore, the Department contended that Appellee is not a "person in interest" entitled to inspection under § 4-351(b). Even if he were, the Department argued denial was necessary because the intent to disseminate the footage would interfere with Mr. Allen's pending criminal case and violate the privacy of others filmed.

For the IID records, the Department argued that these materials were categorically exempt from disclosure because they constitute "personnel records" within the meaning of § 4-311, and that the MPIA's carveout requiring disclosure of personnel records to a "person in interest" does not apply because Appellee is not the subject of the records.

7

### i. The Surveillance Video.

On January 23, 2025, the court found the Department improperly withheld the surveillance video and issued an order requiring the Department to produce said video to Appellee. Under Gen. Prov. § 4-351, the court noted that any concerns about revealing camera angles could be resolved through redaction, rather than a total denial. Furthermore, the court found that Appellee is a "person in interest" as the personal representative of the Estate, and the Department failed to identify a specific law enforcement proceeding that would be harmed, a person whose trial would be prejudiced, or a privacy interest that would be violated by disclosing the surveillance video.[4] In total, the court reasoned:

---

[4]     Additionally, the court dismissed the Department's argument that the sealing order from the related federal case precluded the disclosure. The court clarified the doctrine of collateral estoppel did not apply because the federal order was not "actually litigated" and did not involve the same legal issues as an MPIA request. In addressing this argument, the court explained:

> Finally, [the Department] introduced as evidence at the January 14, 2025, hearing a copy of an "Order to File Under Seal" entered in *Terry L. Proctor, Sr., et al. v. Carolyn J. Scruggs, et. al.,* RDB-23-3396 and *Terry L. Proctor, Sr., et al. v. State of Maryland, et al.,* RDB-24- 251, which governs the video that is the subject of Proctor, Sr.'s MPIA request. [The Department] argues that this order precludes inspection of the video recording. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Colandrea v. Wilde Lake Comm. Assn, Inc.*, 361 Md. 371, 387 (2000) (quoting *Murray Int'l v. Graham*, 315 Md. 543, 547 (1989)). The order sealing the above-referenced federal cases does not preclude inspection under the MPIA because the uncontested motion to seal that resulted in Proctor, Sr. obtaining a copy of the video recording under a protective order was not actually litigated and did not involve the same issues as this case under the MPIA.

**Did [The Department] Violate the MPIA by Denying Inspection of the Video Recording?**

The short answer is: yes. The longer answer follows as the Court will address the parties' respective arguments regarding whether Proctor, Sr. is entitled to inspect the video recording pursuant to the MPIA.

Section 4-351 (a)(3) of the MPIA provides that a custodian may deny inspection of "records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a municipal or county attorney, a police department, a State or local correctional facility, or a sheriff." Counsel for Proctor, Sr. noted at the evidentiary hearing on January 14, 2025 that this argument would only have some merit if "master villains" were to attempt to memorize the configuration of video surveillance equipment to determine what the cameras capture and do not capture and use that information to obtain "intelligence information" or otherwise breach "security procedures." While that argument may be flirting with hyperbole, the [Department] did not effectively demonstrate why it should be entitled to deny inspection under § 4-351 (a)(3) of the MPIA. To the extent there are potential issues related to "intelligence information or security procedures," those issues can effectively be addressed by redacting the video to prevent the video from revealing the camera's field of view. The basis for denial of inspection of the requested video recording provided under MPIA § 4-351 (a)(3) is not applicable here and does not provide a basis to deny inspection of the video recording.

Section 4-351 (b)(1) of the MPIA provides that "[a] custodian may deny inspection by a person in interest only to the extent that the inspection would interfere with a valid and proper law enforcement proceeding." Proctor, Sr. is a "person in interest" as that term is defined in MPIA § 4-101 (g) because, as the personal representative of the estate of Proctor, Jr., he is "a designee of the person or governmental unit" that is "the subject of a public record." Indeed, "a personal representative steps into the shoes of [a] decedent," *ACandS, Inc. v. Asner*, 104 Md. App. 608, 644 (1995), as contemplated by § 7-401 (y)(1) of the Maryland Estates and Trusts Article, which provides generally that "[a] personal representative may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted." [The Department] has not precisely identified what the "valid and proper law enforcement proceeding" is that would trigger the applicability of this provision, let alone demonstrated how production of the video recording would interfere with the proceeding.

Section 4-351(b)(1) of the MPIA does not provide a basis to deny inspection of the video recording. Section 4-351 (b)(2) of the MPIA provides that "[a] custodian may deny inspection by a person in interest only to the

9

extent that the inspection would deprive another person of a right to a fair trial or an impartial adjudication." [The Department] has not sufficiently demonstrated how production of the video recording would "deprive another person of a right to a fair trial or impartial adjudication." If the concern relates to potential publicity if the video were to be released by news media or social media users, that concern can be addressed in the context of the voir dire process during jury selection by asking potential jurors whether they have any knowledge of the incident from any other source. Section 4-351 (b)(2) of the MPIA does not provide a basis to deny Proctor, Sr.'s MPIA request for the video recording.

Section 4-351 (b)(3) of the MPIA provides that "[a] custodian may deny inspection by a person in interest only to the extent that the inspection would["] "constitute an unwarranted invasion of personal privacy." [The Department] has not sufficiently demonstrated how production of the video recording of an open area shared by multiple inmates in which the cameras are not concealed would somehow "constitute an unwarranted invasion of personal privacy." If the faces or other identifying characteristics of individuals unrelated to the incident captured on the video recording are visible, that could be addressed through redaction. Section 4-351 (b)(3) of the MPIA does not provide a basis to deny Proctor, Sr.'s MPIA request for the video recording.

The potential applicability of MPIA §§ 4-351 (a)(3), (b)(1), (b)(2) and (b)(3) must also be considered against the backdrop of MPIA § 4-343, which provides that "[u]nless otherwise provided by law, if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, the custodian may deny inspection by the applicant of that part of the record, as provided in this part." This provision likewise does not provide a basis for denying inspection of the video recording. . . .

Three days after the court issued an order for production, the Department noted the instant appeal.

### ii. The IID Report, and The Related Audio and Video Recordings.

On March 6, 2025, the court entered a separate order addressing whether the Department "properly denied inspection of records related to [the Department's] internal investigation of the incident that resulted in Proctor, Jr.'s death[.]"

10

The Department provided the court with an incident report prepared by the IID and related video and audio recordings. After conducting an in-camera review of the records, the court determined the Department properly denied the investigative report and audio recordings to Appellee. The court explained that while the MPIA creates a general presumption in favor of public disclosure, it includes specific mandatory and discretionary exceptions designed to protect sensitive information, particularly for "personnel records." Since these documents were generated specifically to investigate the conduct of the Department's employees, the court determined those employees were the "persons in interest," not the decedent.

Conversely, the court ruled that the video recordings must be disclosed because, unlike the other records, the videos "were not generated for the purpose of investigating [the Department's] employees[.]" Moreover, as the personal representative of the estate, the court determined Appellee "steps into the shoes" of the decedent, qualifying him as a person in interest with a right to inspect the video. Specifically, the court reasoned:

> **Did [the Department] violate the MPIA by denying inspection of the internal investigative report and related audio and video recordings?**
> The short answer is: no as to the internal investigative report, no as to the audio recordings, and yes as to the video recordings. The longer answer follows as the Court will address why Proctor, Sr. is not entitled to inspect the internal investigative report and audio recordings but is permitted to inspect the video recordings pursuant to the MPIA.
> * * *
> "The term 'personnel record' is not expressly defined in the [MPIA]." *Kirwan v. The Diamondback*, 352 Md. 74, 82 (1998). Regardless, MPIA § 4-311 (a) "discloses what type of documents the Legislature considered to be personnel records." *Id.* MPIA § 4-311 (a) provides that "a custodian shall deny inspection of a personnel record of an individual, including an application, a performance rating,' or scholastic achievement information." "Although this list was probably not intended to be exhaustive, it does reflect

11

a legislative intent that 'personnel records' mean those documents that directly pertain to employment and an employee's ability to perform a job" and "relate to [an employee's] hiring, discipline, promotion, dismissal, or any matter involving [their] status as an employee." *Id*. at 82-83. The internal investigative report, audio recordings, and video recordings are also "personnel records" of which a custodian "shall deny inspection" pursuant to section MPIA § 4-311 (a), unless an exception applies.

There is a potentially applicable exception that requires [the Department] to permit inspection by Proctor, Sr. MPIA § 4-311 (b) provides that "[a] custodian shall allow inspection [of personnel records] by . . . the person in interest." Whether Proctor, Sr. is entitled to inspect some or all of the records at issue depends on whether he is a "person in interest." MPIA § 4-101 (g) of the MPIA defines "person in interest" to include: "(1) a person or governmental unit that is the subject of a public record or a designee of the person or governmental unit." In this case, Proctor, Sr., as the personal representative of the estate of Proctor, Jr. is a designee of Proctor, Jr. and his estate. Indeed, "a personal representative steps into the shoes of [a] decedent," *ACandS, Inc. v. Asner*, 104 Md. App. 608, 644 (1995), as contemplated by § 7-401 (y)(1) of the Maryland Estates and Trusts Article, which provides generally that "[a] personal representative may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have commenced or prosecuted." Proctor, Jr. is not the subject of the records at issue for all purposes in the context of an MPIA request though.

With respect to the internal investigative report, the employees [the Department] was investigating are the subjects and persons in interest for purposes of the MPIA, and that report was specifically generated for the purpose of investigating those individuals. With respect to the audio recordings of investigative interviews, again the employees who were being investigated are the subjects of the records and the persons in interest in the context of an MPIA request for those audio recordings. Those audio recordings were also specifically made for the purpose of investigating employees of [the Department]. Proctor, Jr., however, is ultimately the subject of the video recordings related to the circumstances of his death, making Proctor, Sr. a person in interest under the MPIA and entitling him to inspect the video recordings pursuant to the MPIA. Those video recordings were not generated for the purpose of investigating employees of [the Department].

The internal investigative report and audio records do not fit within the exception to "personnel records" in MPIA § 4-311 (c)(1). The records are not "a record relating to an administrative or criminal investigation of misconduct by a police officer, including an internal affairs investigatory

12

record" because the subjects are not "police officers" as that term is defined for purposes of the MPIA and otherwise are not covered by that provision of the MPIA.

Finally, MPIA § 4-343, which provides that "[u]nless otherwise provided by law, if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, the custodian may deny inspection by the applicant of that part of the record, as provided in this part" does not provide a basis for denying inspection of the video recordings.

For these reasons, the court ordered the Department to provide the IID video recordings to Appellee. The Department noted an appeal to the March 6 order that same day.

## STANDARD OF REVIEW

Under Gen. Prov. § 4-362, a party denied access to public records may challenge that decision in circuit court. *See Lamson v. Montgomery Cnty.*, 460 Md. 349, 359–60 (2018). When reviewing a circuit court's ruling on an MPIA request, the appellate court determines whether there was an adequate factual basis for the decision and whether the court's findings were clearly erroneous. *Id.* Findings are not clearly erroneous if they are supported by any competent material evidence. *Id.* However, while factual findings receive deference, any discretionary rulings based on statutory interpretation are reviewed *de novo*. *Id.*

## DISCUSSION

I.    **The Circuit Court Properly Ordered the Disclosure of the Surveillance Video.**

A.    **The Parties' Arguments**

The Department first asserts that the surveillance video is an investigatory record under § 4-351, and that its release included confidential information of Dorsey Run that

"would contravene the public interest" by revealing "how future crimes could be committed within the facility's highly controlled environment." The Department cites unreported case law from other jurisdictions limiting or withholding the distribution of prison surveillance videos based on security and safety considerations. Furthermore, the Department argues a simple redaction of "the video to eliminate these security concerns" is not feasible, although it does not specifically explain why or provide an alternative option short of release.

Second, the Department argues the court erred in finding Appellee is a "person in interest" because he is not "the individual targeted or being investigated" in the surveillance video. It cites *Maryland Department of State Police v. Dashiell*, 443 Md. 435, 448 (2015), for the proposition that a "person in interest" is "narrowly" interpreted. Here, it argues Mr. Allen is the "person in interest" because he is being investigated, not Appellee.

Even if Appellee is a "person in interest," the Department further argues it should not be compelled to produce the surveillance video because "it would 'interfere with a valid and proper law enforcement proceeding' and would 'constitute an unwarranted invasion of personal privacy'" under Gen. Prov. §§ 4-351(b)(1), (3). Regarding the first reason, the Department contends that disclosing the video would "prematurely reveal[] witnesses or potential evidence in Mr. Allen's pending criminal proceeding." Second, the Department argues that disclosure would invade personal privacy by "revealing the identity of other incarcerated individuals shown in the footage."

Appellee responds with five principal arguments. First, Appellee asserts no confidential security information would be revealed from disclosing the surveillance video.

In any event, Appellee notes the video can be redacted by either "digitally insert[ing] an opaque 'frame' around the edges of the footage to conceal the extent of the camera's view[,]" or by "produc[ing] a copy of the footage which has been permanently 'zoomed in' such that the murder is still visible, but not the original scope of the camera's full view."

Second, Appellee states he is a "person in interest" who is statutorily entitled to review the surveillance video because he both "steps into the shoes" of the decedent under Md. Code, Estates and Trusts § 7-401, and is a "designee" of the decedent under Gen. Prov. § 4-101. Even if not a "person in interest," Appellee asserts the inquiry is irrelevant because the Department "has not met its burden to show that a properly redacted video would reveal intelligence information or security procedures or that it is contrary to the public interest to produce it[.]"

Third, regarding the disclosure's alleged "interfere[nce] with a valid and proper law enforcement proceeding," Appellee asserts this issue is unpersuasive, since "it is undisputed that the video will be provided to [Mr. Allen] and his lawyers as part of the Brady material produced in the criminal case against him."

Fourth, regarding the Department's invasion of privacy argument, Appellee maintains there is no expectation of privacy because the camera "is open and obvious to the prisoners[,]" the prisoners themselves "sleep[] in bunkbeds with no walls or partitions[,]" and the video does not show "any prisoners in a state of undress, using the restroom (the bathroom area is not recorded) or otherwise in a private moment."

Lastly, Appellee argues the reason for requesting the video is to further public policy by "using the video to seek legislative changes . . . [to] provide for closer supervision of

15

incarcerated persons in dormitory settings and prohibit easy access to weapons-making material in Maryland's correctional institutions."

## B.      Analysis

Our analysis follows a three-step inquiry, beginning with whether the video constitutes an investigatory record under § 4-351(a), which would provide the Department with discretion to deny inspection. Next, we are tasked with determining whether Appellee qualifies as a "person in interest" under § 4-101(g), which would grant him enhanced inspection rights that limit the Department's discretion to withhold the record. If Appellee is a "person in interest," we must lastly determine whether the Department satisfied its heightened burden to prove that disclosure to a "person in interest" would result in a specific, identifiable harm under § 4-351(b).

Here, the circuit court determined the surveillance video is an investigatory record, that Appellee is entitled to inspect the surveillance video because he is a "person in interest," and disclosure to a "person in interest" does not outweigh any of the potential harms enumerated under § 4-351(b). We affirm. The surveillance video is an investigatory record because it can be used for "correctional" or "prosecution" purposes under § 4-351(a)(2); Appellee is a "person in interest" because he is the personal representative of the Estate of the decedent who is the subject of the investigatory record; and the Department failed to overcome Appellee's statutory right to inspection because it relied only on generalized concerns regarding privacy and trial interference. Accordingly, we hold the circuit court did not err in ordering disclosure of the surveillance video.

## 1. Whether the Surveillance Video Meets the Investigatory Records Exemption.

As discussed, the Department maintains some measure of discretionary authority to withhold investigatory records from public inspection. *See id.* § 4-351(a). Before determining whether the circuit court erred in ordering disclosure, we must determine whether the surveillance video meets the investigatory records exemption under § 4-351. Investigatory records are:

> (1)    records of investigations conducted by the Attorney General, a State's Attorney, a municipal or county attorney, a police department, or a sheriff;
> (2)    an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose;
> (3)    records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a municipal or county attorney, a police department, a State or local correctional facility, or a sheriff; or
> (4)   records, other than a record of a technical infraction, relating to an administrative or criminal investigation of misconduct by a police officer, including an internal affairs investigatory record, a hearing record, a record of positive community feedback, and records relating to a disciplinary decision.

*See id.* § 4-351(a).

The classification of a record into one of the specific prongs under § 4-351(a) dictates the level of proof required by the custodian to justify withholding it. As the Supreme Court of Maryland clarified in *Office of State Prosecutor v. Judicial Watch, Inc.*, if a record was compiled by "the Attorney General, a State's Attorney, a municipal or county attorney, a police department, or a sheriff[,]" under § 4-351(a)(1), it is automatically presumed to be compiled for law enforcement or prosecution purposes. 356 Md. 118, 139 (1999). This means the record is *prima facie* investigatory in nature, and the government is *ipso facto* granted discretion to deny inspection. *See* Gen. Prov. § 4-351(a). However, if

17

the record was not compiled by any of the aforementioned entities, there is no presumption that the record is an investigatory record. *See Judicial Watch, Inc.*, 356 Md. at 139-40. As such, the custodian bears the burden of proof to demonstrate how the records meet the requirements of § 4-351(a)(2)-(4) before having discretion to deny inspection under the investigatory records exemption.

Here, the Department compiled the surveillance video—an entity distinct from "the Attorney General, a State's Attorney, a municipal or county attorney, a police department, or a sheriff." *See* Gen. Prov. § 4-351(a)(1). Accordingly, the Department bears the burden of demonstrating the surveillance video meets the requirements of § 4-351(a)(2)-(4) to justify using the investigatory records exemption.

We conclude the surveillance video falls within the protections of § 4-351(a)(2) because it serves as a foundational element for both criminal and administrative investigations. The surveillance video depicts Mr. Allen "entering the victim's bunk, attacking him, and leaving." Under § 4-351(a)(2), this footage is maintained for a "correctional purpose," as the facility must review the recording to identify internal security breaches, staff negligence, or violations of institutional rules. Furthermore, the record serves a "prosecution purpose" under § 4-351(a)(2) because the State's Attorney can use the recording to establish the *actus reus* in Mr. Allen's criminal case. Consequently, the surveillance video is an investigatory record under § 4-351(a)(2) because it is "an investigatory file compiled for correctional, [and] prosecution purpose[s]."

18

## 2. Whether Appellee is a "Person in Interest."

If the surveillance video is an investigatory record under § 4-351(a)(2), the Department has discretion to withhold inspection, so long as Appellee is not a "person in interest" and disclosure would not trigger the conditions set forth under § 4-351(b). The resolution of this dispute, therefore, first hinges on whether Appellee qualifies for the enhanced inspection rights afforded to "persons in interest."

A party is a "person in interest" when they are "a person . . . that is the *subject* of a public record or a designee of the person. . . ." *See id.* § 4-101(g) (emphasis added). Under the plain language of § 4-101(g), the decedent is the "subject" of the record, given that his final moments and subsequent death are the focal point of the captured footage. Thus, we find Appellee is a "person in interest," insofar as he serves as the legal successor to the "subject" of the surveillance video.

For the sake of clarity, case law indicates that the subject of a public record is the "*person who is investigated*" under § 4-101(g). *See Blythe v. State*, 161 Md. App. 492, 533 (2005) (citation omitted) (emphasis in original). Under this narrower definition, we still find Appellee is a "person in interest" because the video investigates the decedent's injuries and the circumstances leading to his death.[5]

Case law suggests there is a distinction between the target of an investigation and an incidental third party. The Supreme Court of Maryland grappled with this distinction in

---

[5] Notwithstanding this purported distinction, we find no meaningful difference between the two definitions for the purposes of this opinion.

*Dashiell v. Maryland State Police*, 443 Md. 435 (2015). In *Dashiell*, the appellant sought investigatory records concerning Sergeant John Maiello, who the appellant alleged left a racially offensive voicemail during an official search. 443 Md. at 439. The Court concluded the appellant was not a "person in interest" because the subject of the investigation was Sergeant Maiello. *Id.* at 463. Thus, *Dashiell* clarifies that a person's proximity alone to a record does not necessarily make them a "person in interest."

Similarly, in *Maryland Dep't of State Police v. Maryland State Conf. of NAACP Branches*, 190 Md. App. 359, 361–62, *aff'd*, 430 Md. 179 (2013), the appellee sought Maryland State Police records relating to "allegations of illegal racial profiling[.]" There, the parties previously "entered into a federal consent decree in 2003 that obligated [the appellant] to combat racial profiling by its officers." *Id.* at 362. Suspicious that the appellant was not fulfilling the obligations in the consent decree, the appellee filed a request under the MPIA for twelve categories of State Police records. *Id.* In determining whether the appellee was entitled to inspect such records under the MPIA, this Court accepted the stipulation that the appellee did not qualify as a "person in interest." *Id.* at 363.

Here, the Department alleges the subject of the records Appellee seeks is Mr. Allen. The circuit court disagreed and determined Appellee was a "person in interest" by virtue of being the personal representative for the decedent's estate, as contemplated by § 7-401(y)(1) of the Maryland Estates and Trusts Article. *See* Est. & Trusts § 7-401(y)(1) ("A personal representative may prosecute, defend, or submit to arbitration actions, claims, or proceedings in any appropriate jurisdiction for the protection or benefit of the estate, including the commencement of a personal action which the decedent might have

20

commenced or prosecuted. . . .”). While Maryland jurisprudence has not directly addressed whether a personal representative can be a "person in interest," we find that such a reading remains consistent with the statute's text because the MPIA should be liberally construed in favor of granting the right to inspection. *See* Gen. Prov. § 4-103(b); *cf. id.* § 4-101(g).

Establishing this broad principle, however, does not resolve whether Appellee specifically is a "person in interest," since we still must determine whether the decedent is the "person who is investigated." We affirm that the decedent is a "person in interest" by recognizing that an investigation into a prison stabbing is not strictly limited to the assailant but may encompass the victim and their representative interests.

Here, the decedent, Terry Proctor, Jr., is the "person who is investigated" by virtue of the physical trauma and death he experienced, which constitutes the primary focus of the surveillance footage. Insofar as the Department used the video to examine the decedent's cause and manner of death, the decedent becomes the central focus of the investigation. Allowing the Department to unilaterally define the focus of its investigation would grant it the power to deny disclosure whenever it sees fit, undermining the very purpose of statutory oversight. Furthermore, insofar as the Department relied on the video to analyze the decedent's injuries, he becomes the subject of the medical-legal inquiry into the circumstances of his death. We conclude Appellee stands in the shoes of the decedent as the personal representative of the Estate, thereby achieving the "person in interest" status necessary to inspect the records that document the decedent's final moments.

This case is also distinguishable from *Dashiell* and *Maryland State Conf. of NAACP Branches*. While the appellant in *Dashiell* was the person that overheard an offensive slur,

21

she was not the individual whose physical actions or condition were being scrutinized by the state to solve a crime. Similarly, while the appellees in *Maryland State Conf. of NAACP Branches* sought records to identify systemic failures by the State Police, they were not the specific individuals being pulled over in the records they sought to inspect. Unlike those cases, where the requesters were collateral to the underlying events, the decedent here is the very person around whom the investigation revolves. Accordingly, it was not an error for the court to determine Appellee, as the legal successor to the decedent, is a "person in interest."

### 3. Whether the Circuit Court Erred in Ordering Disclosure Under the Investigatory Records Exemption.

Having determined the surveillance video is an investigatory record under Gen. Prov. § 4-351(a) and Appellee is a "person in interest" under § 4-101(g), the analysis now turns to whether the court erred in ordering the Department to disclose the video to Appellee. Since Appellee is granted enhanced inspection rights as a "person in interest," the Department has the burden of proving that nondisclosure is justified under one of the specific exemptions enumerated under § 4-351(b), which states:

> (b)   A custodian may deny inspection by a person in interest only to the extent that the inspection would:
> (1)   interfere with a valid and proper law enforcement proceeding;
> (2)   deprive another person of a right to a fair trial or an impartial adjudication;
> (3)   constitute an unwarranted invasion of personal privacy;
> (4)   disclose the identity of a confidential source;
> (5)   disclose an investigative technique or procedure;
> (6)   prejudice an investigation; or
> (7)   endanger the life or physical safety of an individual.

To this end, the Department argues the exemptions of §§ 4-351(b)(1) and (3) apply because disclosure would "interfere with a valid and proper law enforcement proceeding" and "constitute an unwarranted invasion of personal privacy." Nonetheless, we hold the Department fails to meet its burden.

Regarding the "interference" claim under § 4-351(b)(1), the Department offers only a generalized concern that pre-trial disclosure might taint the evidentiary record. However, it fails to specify how providing a copy of the video to Appellee—who is already a central figure in Mr. Allen's case—would impede an ongoing investigation, particularly when the incident has already been documented and the witnesses have been identified. Furthermore, as of the issuance of this opinion, Mr. Allen was ultimately convicted of three charges (voluntary manslaughter, possession/receiving a weapon while confined/detained, and dangerous weapon with intent to injure) related to the decedent's death. Accordingly, the "interference" exemption under § 4-351(b)(1) no longer provides a valid basis for withholding the requested video.

Similarly, the Department's reliance on the "privacy" exemption under § 4-351(b)(3) is misplaced. While the video depicts a sensitive and violent event, any privacy interests of the individuals captured on film must be weighed against Appellee's statutory right to inspect public records. Here, prisoners possess a substantially diminished expectation of privacy while in state custody. *See e.g., Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (holding "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell" because "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept

23

of incarceration and the needs and objectives of penal institutions."); *Samson v. California*, 547 U.S. 843, 852-57 (2006); *McFarlin v. State*, 409 Md. 391, 407 (2009). Accordingly, Appellee's statutory right outweighs any purported privacy risk to the individuals captured in the footage.

In any event, the two exemptions do not justify a blanket denial of the surveillance record. The public maintains a significant interest in the oversight of government conduct within its correctional facilities—particularly here, where it is troubling that officers reportedly remained unaware of the attack until they were notified by the assailant. This delay suggests a potential lapse in the Department's duty to actively monitor its security feeds. By withholding the record in its entirety, the Department effectively shields its actions from scrutiny, a result that directly contravenes the MPIA's core mandates of transparency and accountability. At most, the Department may be entitled to targeted redactions; however, it has failed to meet its burden of proving that such redactions are necessary.

In a final attempt to justify non-disclosure, the Department contends that because the records contain "intelligence information," they must be withheld. This argument is flawed on several fronts. First, the mere presence of intelligence information does not establish a statutory right to deny a request; rather, under § 4-351(a)(3), such information is simply a factor used to determine whether a record is "investigatory"—a classification we have already conceded applies here. Moreover, § 4-351 does not grant the Department absolute discretion to withhold investigatory records solely because they contain intelligence information. At most, the Department may argue that the inclusion of such

24

information renders disclosure contrary to the public interest under §§ 4-358 or 4-343. Nevertheless, we find this argument unpersuasive. The Department has failed to articulate how the disclosure of surveillance footage depicting inmates in their bunks would jeopardize legitimate intelligence concerns or compromise institutional security.

In sum, because Appellee is a "person in interest" and the Department has not demonstrated an exemption for denying inspection to a "person in interest," the court did not err in ordering disclosure of the surveillance video.

## II. The Circuit Court Properly Ordered the Disclosure of the IID Video Records.

### A. The Parties' Arguments

The Department argues the court's erroneous determination that Appellee is a "person in interest" warrants reversal for its March 6 order. This time, the relevant records are the IID videos, which the circuit court determined were "personnel records" under § 4-311. The Department contends the court erred because the "person in interest," for purposes of the personnel records exemption, were the Department employees. It states that only Department employees are "person[s] of interest" because the IID videos were "records of the Department's investigation of its employees' specific response to the attack of Mr. Proctor, Jr., as well as records that enable the Department to review and assess its employees' response to other disturbances." Appellee's arguments for the second issue are the same as his arguments for the first issue.

### B. Analysis

Because the Department relied exclusively on the "personnel records" exemption, our analysis is limited to two primary determinations: (1) whether the videos meet the

25

"personnel records" exemption, and (2) if not, whether the Department properly withheld them under the discretionary public interest standards set forth in § 4-358 and § 4-343. While we disagree with the circuit court's classification of the video recordings as "personnel records" under Gen. Prov. § 4-311, we affirm the final ruling that Appellee is entitled to view the IID video records because the Department has not demonstrated disclosure would be contrary to the public interest. Accordingly, we affirm the lower court's judgment.

### 1. Whether the IID Video Records Meet the Personnel Records Exemption.

We begin by addressing the Department's stipulation that the IID video records are "personnel records." A "personnel record" is a record that "pertains to discipline of an employee." *Dashiell*, 443 Md. at 458; *see also Kirwan v. The Diamondback*, 352 Md. 74, 83-84 (1998) (stating personnel records include the "hiring, discipline, promotion, dismissal, or any matter involving [] status as an employee."); Gen. Prov. § 4-311(a) (listing applications, performance ratings, and scholastic achievements as "personnel records").

At the same time, a record is not a "personnel record" simply because it identifies an employee. *See, e.g., Kirwan*, 352 Md. at 84; *Baltimore Action Legal Team v. Off. of State's Att'y of Baltimore City*, 253 Md. App. 360, 380 (2021) (observing that the legislature did not intend for every record that happens to identify an employee to be shielded from disclosure as a personnel record). For instance, in *Maryland State Conf. of NAACP Branches*, this Court determined that "investigative files of a police department

26

concerning racial profiling" are not "personnel records" because they "do not *directly* pertain to discipline. . . ." *See* 190 Md. App. at 372-74 (emphasis in original); *see also Kirwan*, 352 Md. at 84 (finding parking tickets addressed to an employee are not "personnel records"). Indeed, we have held that an agency may only invoke the personnel records exemption if it can demonstrate the record addresses substantive "personnel issues," such as performance ratings or a general assessment of an employee's professional competence. *See Mayor of Ocean City v. The Washington Post*, No. 774, Sept. Term, 2024, 2026 WL 915012, at *20 (Md. App. Ct. Apr. 3, 2026) (citing *Baltimore Action Legal Team*, 253 Md. App. at 381).

Here, the Department stated the IID videos were a part of "an administrative IID investigation" that "contains names, home addresses of the employees[,]" and was intended "to target the employees whose conduct might have been caused [sic] into question after this event transpired." During oral arguments, counsel for the Department clarified that the IID videos represent the correctional officers' specific "response[s]" to the death of the decedent. After conducting an in-camera review, the circuit court determined the IID videos were "personnel records."

We disagree with the circuit court's determination. Ultimately, a video documenting an employee's response to an urgent matter does not become a "personnel record" solely because it might later be used for disciplinary review. To hold otherwise would grant the Department unilateral authority to define its records, effectively shielding it from meaningful oversight. *Cf. Mayor of Ocean City*, 2026 WL 915012, at *20 (explaining that a report becomes a "personnel record" only when it moves "up the chain of review" and is

27

supplemented with "information [relative to 'personnel issues']"). In this instance, the record contains no evidence suggesting the video recordings address substantive "personnel issues," such as performance evaluations or formal assessments of an employee's job competence. Rather, the videos appear to be objective recordings of the employees' response to the murder, devoid of any inherent analysis. Because the Department has not demonstrated that these recordings are anything more than factual records, we find the videos are not "personnel records."

Furthermore, the Department fails to demonstrate how a record becomes a "personnel record" simply because it is stored within a broader "personnel record." Although we decline to decide whether the complete IID report constitutes a "personnel record," we acknowledge the Department's assertion that the full report contains sensitive information—such as employee names and home addresses—which may implicate substantive "personnel issues." Nevertheless, the disclosure order is strictly limited to the video recordings and does not extend to the full IID report. Since the Department has not argued that the video recordings itself contain sensitive personal information—such as the "names, [and] home addresses of [its] employees"—we find the inclusion of the videos in a larger, confidential file does not automatically shield it from inspection.

To summarize, because the video recordings document the underlying incident and not the internal evaluation or disciplinary history of the officers, they do not inherently "pertain[] to [the] discipline of an employee." *See Dashiell*, 443 Md. at 458. Accordingly, we find the videos do not meet the "personnel records" exemption.

## 2. Whether the Circuit Court Erred in Ordering Disclosure Under the Personnel Records Exemption.

Having determined that the video recordings are not personnel records—and noting that the Department has asserted no other exemptions—we now address whether the court erred in ordering disclosure. Under Gen. Prov. § 4-358 and § 4-343, the Department may only withhold these records if disclosure would be contrary to the public interest. Although the Department did not raise this argument, we nonetheless find that disclosure serves the public interest. Given that prison staff remained unaware of a stabbing until alerted by the assailant, the record suggests a degree of negligence. Granting Appellee access to these videos facilitates a better understanding of the delayed response, which directly serves the public interest by informing potential legislative reforms and systemic improvements. For these reasons, the court did not err in ordering disclosure of the IID records.

## CONCLUSION

For the reasons expressed, we affirm the judgment of the Circuit Court for Baltimore County. While the surveillance footage is an investigatory record, it is not automatically exempt from disclosure. Since Appellee is a "person in interest," the Department bore the burden of proving that disclosure would cause a specific harm. The Department failed to meet this burden. Its concerns regarding interference with law enforcement were too generalized, and its privacy arguments were undermined by the fact that incarcerated individuals have a significantly diminished expectation of privacy in a high-security environment. Regarding the IID video records, we find that such records are not "personnel records." Inasmuch as disclosure would not be contrary to the public interest, we find the

Department did not have discretion to deny Appellee inspection of the IID video records. For these reasons, the circuit court did not err in ordering disclosure of the surveillance video and the IID records.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**